David B. WILSHIN, Plaintiff,

v.

ALLSTATE INSURANCE CO., et al., Defendants.

Civil Action No. 5:99–CV–438(HL).

United States District Court,
M.D. Georgia,
Macon Division.

May 10, 2002.

David B. Wilshin, Macon, pro se.

Forrest Walker Hunter, Leslie De Lara Luck, Jessica P. Flax, Alston & Bird, Atlanta, GA, for defendants.

### ORDER

LAWSON, District Judge.

Before the Court is Defendant's Motion for Summary Judgment (Tab # 61), Plaintiff's Motion for Summary Judgment (Tab # 79), and Defendant's Motion to Strike Plaintiff's Untimely Counter–Motion for Summary Judgment (Tab # 84). Defendant filed its Motion for Summary Judgment on June 21, 2001, the last day that this Court would allow dispositive motions to be filed. On November 19, 2001, Plaintiff filed his Response to Defendant's Motion for Summary Judgment as well as his own Motion for Summary Judgment. As Plaintiff's Motion for Summary Judgment was filed almost five months after the deadline for dispositive motions, Defendant filed a Motion to Strike Plaintiff's Untimely Counter–Motion for Summary Judgment.

██ In considering whether to grant Defendant's Motion to Strike, the Court notes that Plaintiff's Motion for Summary Judgment was filed the same day that Plaintiff's Response to Defendant's Motion for Summary Judgment was due and that Plaintiff's Motion for Summary Judgment addressed Plaintiff's Fair Labor Standards Act Claim, which Defendant had addressed in its Motion for Summary Judgment. In addition, the arguments set forth by Plaintiff in his Memorandum of Law in Support of Plaintiff's Motion for Summary Judgment (Tab # 80) were the arguments that should have been in Plaintiff's Response to Defendant's Motion for Summary Judgment. This Court considered Plaintiff's arguments set forth in his Memorandum of Law in Support of Plaintiff's Motion for Summary Judgment as though Plaintiff was responding to Defendant's Motion for Summary Judgment. Thus, though the Court will not permit Plaintiff to file a Motion for Summary Judgment nearly five months after the dispositive motion deadline, the Court still considered Plaintiff's arguments set forth in his memorandum.

The Court notes Defendant's argument to strike documents and witnesses that

Defendant claims are improperly used by Plaintiff in support of his Motion for Summary Judgment. As this Court finds that these documents and witnesses did not affect this Court's decision that Defendant was entitled to summary judgment on all Plaintiff's claims, this Court declines to address whether they should be stricken. Thus, Defendant's Motion to Strike (Tab # 84) is granted with respect to Plaintiff's summary judgment motion being untimely, denied with respect to the fact that the Court considered the arguments set forth in Plaintiff's Memorandum in Support of his Motion for Summary Judgment since the Court treated it as a response to Defendant's Motion for Summary Judgment, and moot with respect to whether certain documents and witnesses relied on by Plaintiff in his motion should by stricken, since the Court found for Defendant despite these documents and witnesses being used by Plaintiff.

With respect to Defendant's Motion for Summary Judgment (Tab # 61), the motion is granted for the reasons set forth below.

## I. FACTUAL BACKGROUND [1]

■ In April 1990, David B. Wilshin, Plaintiff, began working with Allstate Insurance Company ("Allstate") as a Neighborhood Office Agent ("NOA"). Plaintiff selected his own business location to lease, located on Riverside Drive in Macon, Georgia. (Pl. Dep. at 37–41, Ex. 4.)

In September of 1998, in an effort to respond to customers' expectations of office hours and after-hours personal service, Allstate introduced new Allstate Agency Standards ("Standards"). (King Aff. ¶ 9.) The Standards required that all agencies be open during Allstate's designated business hours: 9:00 a.m. to 6:00 p.m. on weekdays beginning January 1, 1999, and 9:00 a.m. to 1:00 p.m. on Saturdays beginning July 1, 1999. In addition, the Standards required that a licensed professional be present during all hours in which the agency was open. (King Aff. ¶ 9; Pl. Dep Ex. 5.) The Standards expressly provided that Allstate agents were responsible for meeting the Standards, and that failure to adhere to the Standards could lead to disciplinary action, up to and including termination. (Pl.Dep.Ex. 5.)

On January 29, 1999, shortly after the Standards became effective, Plaintiff sent a letter to Robert Pike, Senior Vice President of Allstate, informing Allstate that his office would not be open on Saturdays due to a conflict with his Sabbath; Plaintiff formally requested an exception from the Saturday hours. (Pl. Dep. at 117–73, Ex. 15.) Plaintiff is an observer of the Jewish religion and recognizes Saturday as his Sabbath. (Pl. Dep. at 223.) According to Plaintiff, his Sabbath does not require that he engage in or refrain from certain activities: "I don't require myself to do anything on the Sabbath other than the fact that I can do anything I want because it's

1. Plaintiff failed to controvert the Statement of Material Facts as To Which There is No Genuine Issue To Be Tried submitted by Defendant in support of its Motion for Summary Judgment. Local Rule 56 provides, "All material facts set forth in the statement served by the moving party will be deemed to be admitted unless controverted by the statement required to be served by the opposing party." U.S. Dist. Ct. for the M. Dist. of Ga., Local Rule 56 (Jan. 15, 2001). The Court notes that Plaintiff did file his own Statement of Material Facts with respect to his Summary Judgment Motion, however, this document did not address many of the facts put forth by Defendant in its Statement of Material Facts. To the extent that Defendant presented facts that Plaintiff did not contradict, the Court deems the facts presented by Defendant to be admitted.

my Sabbath ... I can choose to do anything I want on the Sabbath. That's my contention." (Pl. Dep. at 224–25.)

On February 4, 1999, Allstate's Regional Vice President, Robert W. Clemens, responded to Plaintiff's letter in which Allstate reaffirmed its policy against discrimination and explained that the Standards did not require that Plaintiff be in the office on Saturday, but rather that a licensed professional be present during office hours. (Pl. Dep. at 174, Ex. 16.) The letter also provided Plaintiff with an additional option of maintaining Sunday office hours instead of Saturday hours. (Pl. Dep. at 174, Ex. 16.) Plaintiff never indicated to anyone associated with Allstate that he desired an alternative accommodation. (Pl. Dep. at 267.)

On February 9, 1999, Plaintiff filed a complaint with the Equal Employment Opportunity Commission ("EEOC") stating that he was forced to work on his Sabbath. (Pl.Dep.Ex. 18.) On April 26, 1999, Plaintiff filed a charge with the EEOC, again asserting that he was being forced to work on his Sabbath. (Pl.Dep.Ex. 19.) However, Plaintiff now admits that these statements are erroneous in that he was never forced to work on his Sabbath while working at Allstate. (Pl. Dep. at 214–15.)

After implementation of the Standards, Plaintiff received several written warnings for failing to comply with certain weekday business hours and failing to keep any weekend hours. (King Aff. ¶ 13.) In January 1999, Plaintiff requested four days vacation. (Pl. Dep. at 98, Ex. 6.) Plaintiff's agency manager, Mr. Dave Baumgardner, informed Plaintiff that the Standards required that his office remain open during his vacation and reminded him by letter that "his current plans *would not be in compliance* " and that any noncompliance

with the standards would result in discipline. (Pl. Dep. at 98–99, 107, Ex. 7.) Nevertheless, Plaintiff took four days vacation from January 19, 1999 through January 22, 1999 and closed his office, knowing he was not in compliance with the Standards. (Pl. Dep. at 98–99, 101–03, 109, Ex. 6.) As a result, on February 16, 1999, a review was administered, and Plaintiff received a "Requires Assistance/Does Not Meet" review. (Pl. Dep. at 98, Ex. 6.) In the review, Plaintiff was reminded of the Standards and informed that failure to adhere to the Standards could result in a "Job in Jeopardy Notification." (Pl.Dep.Ex. 6.)

On Wednesday, March 3, 1999, Plaintiff again closed his office during Allstate's mandated weekday business hours. (Pl. Dep. at 137–39, Ex. 11.) On March 5, 1999, Mr. Baumgardner sent Plaintiff a memorandum informing him that he was not in compliance with the Standards. (Pl. Dep. at 137–39, Ex. 11.) On March 22, 1999, Plaintiff was issued a Job in Jeopardy Notification which reminded Plaintiff that closing the agency during regular office hours constituted non-compliance with Allstate's Standards and that failure to achieve the desired performance or behavior would result in his termination. (Pl. Dep. at 145–46, Ex. 12.)

In the following months, Plaintiff continued to violate the Standards by closing his office during regular business hours. Specifically, Plaintiff closed his office for some or all of the day on Friday, May 28, 1999, Tuesday, June 1, 1999, Monday, June 14, 1999, and Sunday, July 11, 1999. (Pl. Dep. at 165–67, Ex. 14.) In addition, once the weekend office hours became effective, Plaintiff hung a sign in the window at his office that stated:

The Allstate Insurance Company has mandated that the office of David B.

Wilshin shall be open on all Sundays from 9:00 a.m. to 1:00 p.m. Out of respect for the Macon, Georgia Christian Community and in observance of their Sabbath, this office will remain closed on Sunday.

(Pl. Dep. at 231–33, Ex. 24.) Plaintiff continued to place this sign in his window, until his termination, even after Defendant asked Plaintiff to remove it. *Id.*

As a result of his continued non-compliance, on or about July 22, 1999, Plaintiff received an Indefinite Job in Jeopardy Notification which stated that Plaintiff's failure to comply with the established requirements or make a reasonable effort to do so would result in his termination. (Pl. Dep. at 161–62, Ex. 14.) Nevertheless, on Sunday July 25, 1999, Plaintiff closed his office and posted the sign in the office window indicating that he would not be open.

On July 29, 1999, Allstate's Human Resources Manager sent a request to Allstate's home office to terminate Plaintiff based on his failure to comply with the Standards. (King Aff. ¶ 14, Ex. G.) The request was approved and Plaintiff was terminated by Allstate on August 19, 1999. (King Aff. ¶ 15.)

## II. CONCLUSIONS OF LAW

### A. Summary Judgment Standard

"[T]he plain language of Federal Rule of Civil Procedure 56(c) mandates the entry of summary judgment, after adequate time and discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 2552, 91

L.Ed.2d 265 (1986). The movant carries the initial burden and must show the court that there is "an absence of evidence to support the nonmoving party's case." *Id.* 106 S.Ct. at 2554. "Only when that burden has been met does the burden shift to the non-moving party to demonstrate that there is indeed a material issue of fact that precludes summary judgment." *Clark v. Coats & Clark, Inc.,* 929 F.2d 604, 608 (11th Cir.1991). The nonmoving party is then required "to go beyond the pleadings" and to present competent evidence in the form of affidavits, depositions, admissions and the like, designating "specific facts showing that there is a genuine issue for trial." *Celotex,* 106 S.Ct. at 2553. The nonmoving party must put forth more than a "mere 'scintilla'" of evidence; "there must be enough of a showing that the jury could reasonably find for that party." *Walker v. Darby,* 911 F.2d 1573, 1577 (11th Cir.1990).

A district court "can only grant summary judgment 'if *everything* in the record ... demonstrates that no genuine issue of material fact exists.'" *Tippens v. Celotex Corp.,* 805 F.2d 949, 952 (11th Cir.1986) (emphasis in original) (citation omitted). Genuine disputes are those where the evidence is such that a reasonable jury could return a verdict for the non-movant. *Anderson v. Liberty Lobby,* 477 U.S. 242, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986).

In deciding whether a genuine factual issues exist, the court must accept the truth of Plaintiff's evidence and must draw all reasonable inferences in Plaintiff's favor. *Cottrell v. Caldwell,* 85 F.3d 1480, 1486 n. 3 (11th Cir.1996). The court may not weigh conflicting evidence nor make credibility determinations. *Hairston v. Gainesville Sun Publ'g Co.,* 9 F.3d 913, 919 (11th Cir.1993).

## B. Plaintiff's Title VII Claims

### 1. Whether Plaintiff's Claims Should be Dismissed as Untimely?

Plaintiff received the EEOC's dismissal and right-to-sue letter on August 6, 1999. The letter stated that "[i]n order to pursue this matter further, you must file a lawsuit against the respondent(s) named in the charge **within 90 days** of the date you *receive* this Notice ... in order to avoid any question that you did not act in a timely manner, it is prudent that your suit be filed **within 90 days of the date this Notice was *mailed* to you** ..." (Pl.Dep. Ex. 21.) Plaintiff wrote to the EEOC, requesting that the EEOC reconsider its dismissal. In response, the EEOC denied Plaintiff's request and reminded Plaintiff of his need to file in ninety days: "Should you wish to pursue this matter further, you may do so by filing a private action in Federal District Court within 90 days following receipt of the 'Dismissal and Notice of Rights' mailed to you on July 29, 1999." (Pl.Dep.Ex. 23.)

On November 5, 1999, ninety-one days after receiving his right-to-sue letter, Plaintiff filed his Complaint. Title 42 U.S.C.A. § 2000e–5(f)(1) states that a plaintiff must file his complaint within ninety days of his receipt of the EEOC's right-to-sue letter. *See Santini v. Cleveland Clinic Fla.*, 232 F.3d 823, 825 (11th Cir.2000).

The requirement that a party file a Title VII action within ninety days after receiving a right-to-sue letter is not a jurisdictional prerequisite. *Jackson v. Seaboard Coast Line R.R. Co.*, 678 F.2d 992, 1007 (11th Cir.1982) (citing *Mohasco Corp. v. Silver*, 447 U.S. 807, 100 S.Ct. 2486, 2490 n. 9, 65 L.Ed.2d 532 (1980)); *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385,

102 S.Ct. 1127, 1132, 71 L.Ed.2d 234 (1982). However, the Eleventh Circuit has treated this precondition as a condition precedent under Federal Rule of Civil Procedure 9(c). *Jackson,* 678 F.2d at 1009. Rule 9(c) provides that "[i]n pleading the performance or occurrence of conditions precedent, it is sufficient to aver generally that all conditions precedent have been performed or have occurred. A denial of performance shall be made specifically and with particularity." Fed.R.Civ.P. 9(c). The court in *Jackson* effectively describes the effect of Rule 9(c):

> Under this rule, if a party disagrees with a general averment that the conditions precedent have been met, that party may raise the issue with a specific and particular denial. If the party does not deny the satisfaction of the conditions precedent specifically and with particularity, however, the allegations are assumed admitted and cannot later be attacked.

678 F.2d at 1009. Thus, a plaintiff must generally allege in the complaint that all conditions precedent have been fulfilled. If the defendant disagrees with plaintiff's allegation, a denial of performance or occurrence shall be made specifically and with particularity. *Id.* at 1010. Once the defendant contests this issue, the plaintiff has the burden of establishing that he met the ninety day filing requirement. *Green v. Union Foundry Co.*, 281 F.3d 1229, 1233–34 (11th Cir.2002) (citing *Jackson,* 678 F.2d at 1010).

In his Complaint, Plaintiff stated that he timely filed his Complaint after receiving the right-to-sue letter on August 6, 1999. Plaintiff also stated that he exhausted his administrative remedies and complied with all conditions precedent. (Compl.¶ 9(ss).) Defendant's Answer included a Defense

stating, "Plaintiff's claims are barred by his failure to exhaust administrative remedies and satisfy conditions precedent prior to instituting this action." (Answer, Second Defense.) Also in the Answer, Defendant stated, "Allstate denies that Plaintiff has timely filed his Complaint. Allstate lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations set forth in subparagraph (ss) of Paragraph 9 of the Complaint, which allegations therefore stand denied." (Answer ¶ 9(ss).) On March 20, 2001, Defendant filed a Motion to Amend its Answer. The Court granted the Motion and Defendant's Amended Answer was filed. In the Amended Answer, this paragraph was not changed.

On July 21, 2001, Defendant filed its Motion for Summary Judgment. In Defendant's Memorandum in Support of Defendant Allstate Insurance Company's Motion for Summary Judgment, Defendant, for the first time, argued with factual support that Plaintiff did not file suit within the requisite time period and that his suit should be dismissed as untimely. Defendant explains that Plaintiff's receipt of the dismissal from the EEOC on August 6, 1999 triggered the ninety day statutory limitations period and that to bring a valid claim under Title VII, Plaintiff was required to file his Complaint on or before November 4, 1999. Defendant points out that Plaintiff filed his Complaint on November 5, 1999, ninety-one days after receiving his right-to-sue. (Def.'s Mem. Supp. Summ. J. at 11–12.)

In *Jackson*, the defendant asserted that the district court lacked jurisdiction over the Title VII claims because the EEOC complaint was not filed within 180 days of an alleged discriminatory act. 678 F.2d at 1010. The defendant first raised this claim after trial by motion to vacate the judgment and dismiss the action for lack of subject matter jurisdiction. *Id.* The district court denied the motion and the Eleventh Circuit affirmed. *Id.* The court stated that since the conditions precedent to a Title VII action are not jurisdictional, a defendant cannot wait until after trial to take issue with the plaintiff's general averment that the conditions precedent have been satisfied. *Id.* Instead, a defendant must deny in its answer that a condition precedent has not been fulfilled "specifically and with particularity." *Id.* (citing Fed. R.Civ.P. 9(c)). In its answer, the defendant in *Jackson* asserted an affirmative defense, stating that the plaintiff failed to bring "this action within the limits of time prescribed by relevant statutes;" in addition, the defendant specifically stated that it was "without knowledge or information sufficient to form a belief as to the truth" of the plaintiff's specific allegation that the EEOC complaint had been timely filed. *Id.* at 1010–11. The court found that while this answer sufficed as a general denial of the averment, it did not constitute a specific and particular denial, which was required by Rule 9(c) to join in issue the plaintiff's allegations. *Id.* at 1011. The court found that by waiting until after trial to assert that plaintiff's EEOC complaint was not timely filed, the defendant waived its right to raise this claim. *Id.*

■ In reaching its decision, the court in *Jackson* noted that defendant did not raise this issue in its motion for summary judgment or in the pretrial order. *Id.* at 1011 n. 26. Thus to determine whether to dismiss Plaintiff's Title VII claims as untimely since there is no dispute that Plaintiff did not file within ninety days of receipt of the right-to-sue, this Court must consider whether Defendant's Answer con-

stituted a specific and particular denial, and if not, this Court must determine whether Defendant waived its right to raise this claim by waiting to late.

The Court notes that in its Answer, Defendant denied that Plaintiff has timely filed his Complaint; however, Defendant failed to elaborate on Plaintiff's failure to timely file—thereby this denial is nothing more than a general denial. Further, on September 19, 2000, Defendant filed its "Answers to Mandatory Interrogatories" in which Defendant failed to describe the facts of its defenses. Upon being asked to provide a detailed factual basis for the defenses asserted in the responsive pleading, Defendant responded that Plaintiff's claims were barred based on the applicable statute of limitations and stated that the Complaint should be dismissed because Plaintiff failed to exhaust administrative remedies and satisfy conditions precedent prior to instituting this action. (Def.'s Answers to Interrog. at 3.) Thus, Defendant's response did not mention the ninety-one days, the date the right-to-sue was received, the date the Complaint was filed, or any other fact that could have indicated that the Defendant intended to assert that Plaintiff had failed to meet the condition precedent of filing within ninety days of receipt of the right-to-sue.

This Court has been significantly involved with this case since it was filed in 1999. The fact that Defendant waited almost two years after the case was filed to state with specificity that Plaintiff's claim was untimely will not be overlooked. While the Court would have welcomed Defendant's argument earlier in the litigation, the Court is unwilling to let Defendant come forth with a valid reason for dismissing the case after the Plaintiff's case has been pending for over two years. Defen-

dant had a chance to argue the exact argument that Plaintiff had filed one day late in its first Answer, its Amended Answer, its Responses to Mandatory Interrogatories, and in its three Motions to Dismiss; however, Defendant waited until filing a Motion for Summary Judgment on July 21, 2001 to argue this issue. Though Defendant did not wait until after trial as the defendant in *Jackson* did, the Court still finds its delay to be too long. This Court is hesitant to permit Plaintiff to escape from meeting the ninety day filing deadline; however, the Court finds that Defendant waived its right to raise this claim. Therefore, the Court finds that Plaintiff's allegations are not susceptible to attack on these grounds.

### 2. Plaintiff's Religious Discrimination Claim

Title VII prohibits an employer from refusing to hire an individual on the basis of that person's "race, color, religion, sex or national origin." 42 U.S.C.A. § 2000e–2(a)(1). The term "religion" is defined in the statute to include "all aspects of religious observance and practice, as well as belief, unless an employer demonstrates that he is unable to reasonably accommodate ... employee's religious observance or practice without undue hardship on the conduct of the employer's business." 42 U.S.C.A. § 2000e(j). Thus, Title VII requires that an employer "make reasonable accommodation for the religious observances of its employees, short of incurring an undue hardship." *Trans World Airlines, Inc. v. Hardison*, 432 U.S. 63, 97 S.Ct. 2264, 2272, 53 L.Ed.2d 113 (1977).

■ Employees may utilize two theories in asserting religious discrimination claims: disparate treatment and failure to accommodate. *See Chalmers v. Tulon Co.*

*of Richmond,* 101 F.3d 1012, 1017–18 (4th Cir.1996), *cert. denied,* 522 U.S. 813, 118 S.Ct. 58, 139 L.Ed.2d 21 (1997). As the Court is unclear as to which theory Plaintiff brought his claim, the Court will discuss Plaintiff's claim under each theory.

#### a. Disparate Treatment

■ To prevail under a Title VII theory of disparate treatment with respect to religious discrimination, Plaintiff must show that he was treated less favorably than other employees because of his religious beliefs. *Int'l Bhd. of Teamsters v. United States,* 431 U.S. 324, 97 S.Ct. 1843, 1854 n. 15, 52 L.Ed.2d 396 (1977); 42 U.S.C.A. § 2000e–2(a)(1). The evidentiary burdens placed on the employee under this theory mirror those placed on employees alleging employment discrimination based on race or sex. Accordingly, a plaintiff, alleging disparate treatment with respect to his discharge, satisfies his burden at the summary judgment stage if he establishes that his job performance was satisfactory and provides "direct or indirect evidence whose cumulative probative force supports a reasonable inference that [the] discharge was discriminatory." *Chalmers,* 101 F.3d at 1017 (quoting *Lawrence v. Mars, Inc.,* 955 F.2d 902, 905–06 (4th Cir.), *cert. denied,* 506 U.S. 823, 113 S.Ct. 76, 121 L.Ed.2d 40 (1992)).

If the employee cannot provide direct evidence, he can utilize a burden-shifting scheme similar to the one the Supreme Court articulated in *Texas Department of Community Affairs v. Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981), and *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). At the first stage of this approach, Plaintiff bears the burden of establishing a prima facie case of disparate treatment

with respect to religious discrimination. Plaintiff must establish, through direct or indirect evidence, that (1) he is a member of or practices a particular religion; (2) he is qualified to perform the job at issue; (3) he has suffered some adverse employment action; and (4) someone outside the protected class of which he is a member was treated differently. *Gunning v. Runyon,* 3 F.Supp.2d 1423, 1428 (S.D.Fla.1998); *Breech v. Ala. Power Co.,* 962 F.Supp. 1447, 1457 (S.D.Ala.1997), *aff'd,* 140 F.3d 1043 (11th Cir.1998).

Following the above analysis, the Court finds that Plaintiff has satisfactorily established the first three elements of the prima facie case. Plaintiff is Jewish, there is no evidence to indicate that he was not qualified to perform his job, and he received disciplinary notices and was ultimately terminated.

■ With respect to the fourth element, Plaintiff has failed to produce evidence of someone outside of the Jewish religion who was treated differently than Plaintiff. In an effort to satisfy this element, Plaintiff presented evidence of Jewish Allstate agents who were not terminated after failing to comply with the Sunday hours. This evidence does not satisfy the fourth element of Plaintiff's prima facie case. These agents are members of the protected class; they are Jewish. Plaintiff cannot state a prima facie case on the basis of disparate treatment by comparing his treatment to that of a member of the same protected class. *See Mann v. Frank,* 7 F.3d 1365, 1370 (8th Cir.1993). If Plaintiff had presented evidence of a non-Jewish agent who had violated the Standards by engaging in the same conduct as Plaintiff, i.e., closing his office on weekdays and on the weekend day that the agent was expected to work, then, Plaintiff

would have been supporting his argument that he was discriminated against *because of* his religion. However, the evidence of other Jewish agents being retained despite their nonconformity to the Standards actually supports Defendant's position that Plaintiff's religion played no part in Defendant's decision to terminate him. Thus, Plaintiff failed to meet his burden of producing evidence of a non-Jewish employee being treated differently after engaging in the same workplace violations as Plaintiff.

■ However, assuming that the Court were to find that Plaintiff has met his prima facie case, the application of the *McDonnell Douglas* analysis still requires entry of summary judgment for the Defendant. The second stage imposes a burden of production on the employer to articulate a legitimate, nondiscriminatory reason for Plaintiff's termination. *McDonnell Douglas,* 93 S.Ct. at 1824; *Burdine,* 101 S.Ct. 1089. Defendant has met this burden by putting forth evidence of Plaintiff violating company policy on twelve separate occasions between February and July 1999. ( King Aff. Ex. G.) The Court finds that this legitimate, nondiscriminatory reason for Defendant's actions rebuts the presumption of discrimination and shifts the burden back to Plaintiff.

In the final stage of the analysis, the employee must show that the employer's proffered reasons are a pretext for unlawful discrimination. *Burdine,* 101 S.Ct. at 1095. Thus, to prevail on this claim, Plaintiff must present evidence that Defendant's legitimate, nondiscriminatory reason is a pretext for discrimination or retaliation. Plaintiff fails to meet this burden. Plaintiff not only does not dispute the facts put forth by Defendant, Plaintiff also fails

to point to any evidence that would indicate that Plaintiff's violations of company policy was not the reason for his disciplinary notices and termination.

As the Court cannot find that Plaintiff has carried either his initial burden of establishing a prima facie case or his ultimate burden of proving pretext, Plaintiff's disparate treatment claim fails. However, as religious discrimination claims under Title VII can be brought under the disparate treatment theory or the failure to accommodate theory, the Court's finding that Plaintiff's disparate treatment claim fails is not dispositive of Plaintiff's religious discrimination claim.

### b. Failure to Accommodate

■ A plaintiff establishes a prima facie case of religious discrimination resulting from an employer's failure to make reasonable accommodation by showing that: (1) he has a bona fide belief that compliance with a work requirement is contrary to his religious faith; (2) he informs his employer about the conflict; and (3) he is discharged or disciplined for refusing to comply with the requirement. *Beadle v. Hillsborough County Sheriff's Dep't,* 29 F.3d 589, 592 n. 5 (11th Cir.1994), *cert. denied,* 514 U.S. 1128, 115 S.Ct. 2001, 131 L.Ed.2d 1002 (1995); *Beadle v. City of Tampa,* 42 F.3d 633, 636 n. 4 (11th Cir. 1995), *cert. denied,* 515 U.S. 1152, 115 S.Ct. 2600, 132 L.Ed.2d 846 (1995).

■ Once again, the Court is not convinced that Plaintiff has met his prima facie case. Plaintiff has not established that compliance with Defendant's work requirement is contrary to his religious faith. Plaintiff argues that since Saturday is his Sabbath, he is allowed to choose whether

he wants to work on any given Saturday.[2] However, Plaintiff admits that his Sabbath does not prohibit him from working on Saturday; in fact, though Plaintiff does not recall how many times he has worked on Saturdays, he concedes that he has worked with and met with clients on Saturdays. (Pl. Dep. at 224–28.)

■ In addition, Plaintiff has put forth no evidence that he was discharged or disciplined as a result of his failure to comply with an employer demand which conflicted with his religious beliefs. More than four months before the Saturday office hours became effective, Defendant offered Plaintiff the option to work on Sundays. Thus, since Plaintiff was never required to work on Saturday, it is impossible for him to have been disciplined or discharged for refusing to do so.[3] Thus, the Court finds that Plaintiff has failed to meet his prima facie case.

■ The Court also notes that even if such a prima facie case were properly shown, summary judgment for Defendant would still be appropriate. Assuming this Court determined that Plaintiff established his prima facie case by a preponderance of the evidence, the burden would shift to Defendant to show either that (1) it offered to or did reasonably accommodate the plaintiff's religious needs, or (2) it could not reasonably accommodate plaintiff's religious needs. *Ansonia Bd. of Educ. v. Philbrook,* 479 U.S. 60, 107 S.Ct. 367, 371, 93 L.Ed.2d 305 (1986); *Hillsborough County,* 29 F.3d at 592.

■ Upon receiving Plaintiff's letter stating that he could not work on Saturdays, Defendant informed Plaintiff in writing that he could maintain Sunday office hours instead of Saturday office hours to accommodate his religious beliefs. The Court finds that this option constitutes a reasonable religious accommodation under Title VII.[4] As the Court cannot find that Plaintiff has carried either his initial burden or his ultimate burden under Title VII, Plaintiff's failure to accommodate claim fails.

Because Plaintiff has failed to establish a Title VII religious discrimination claim

---

**2.** Plaintiff's claim that working Sunday office hours offended the Christian community is of no relevance to the Court's analysis; Plaintiff's religion does not prohibit him from working on Sundays.

**3.** The record reflects that the discipline administered to Plaintiff was a result of his refusal to comply with weekday office hours, and on one occasion, his refusal to keep Sunday, not Saturday, office hours. (Pl. Dep. Exs. 6, 12, & 14.)

**4.** The Court acknowledges Plaintiff's argument that there was no "business necessity" for offering Sunday hours and that Sunday office hours were not consistent with Allstate's stated objectives of "meeting customer expectations." (Am. Compl. at 3; Pl.'s Resp. to Def.'s Mot. for Summ. J. at 6–7.) However, the law does not require that the religious accommodation put forth by the employer be justified by business necessity in a failure to

accommodate case. To be in compliance with Title VII an employer need not give an employee a choice among several accommodations, nor is the employer required to demonstrate that alternative accommodations proposed by the employee entail undue hardship: "an employer has met its obligation under § 701(j) when it demonstrates that it has offered a reasonable accommodation to the employee." *Ansonia,* 107 S.Ct. at 372.

In addition to not utilizing the accommodations offered by Allstate, Plaintiff did not request or indicate to anyone associated with Allstate management that he wanted an alternative accommodation. (Pl. Dep. at 267.) *See Hillsborough County,* 29 F.3d at 593 (recognizing an employee's duty to make a good faith attempt to accommodate his religious needs through means offered by his employer).

of either disparate treatment or reasonable accommodation, the Court grants summary judgment to Defendant with respect to Plaintiff's religious discrimination claim.

### 3. Plaintiff's Retaliation Claim

█ In order to establish a prima facie case of Title VII retaliation, Plaintiff must show (1) he engaged in statutorily protected expression, (2) he suffered an adverse employment action, and (3) there was a causal link between the protected expression and the adverse employment action. *Goldsmith v. City of Atmore,* 996 F.2d 1155, 1163 (11th Cir.1993).

█ Plaintiff engaged in statutorily protected expression when he filed his first EEOC charge. *See Berman v. Orkin Exterminating Co.,* 160 F.3d 697, 702 (11th Cir.1998) (holding that filing an EEOC complaint is protected activity); *Rollins v. State of Fla. Dep't of Law Enforcement,* 868 F.2d 397, 400 (11th Cir.1989) ("holding that statutorily protected expression includes internal complaints to superiors as well as complaints lodged with the EEOC"). Title VII declares that "[i]t shall be an unlawful employment practice for an employer to discriminate" against an employee "because he has made a charge" of discrimination. 42 U.S.C.A. § 2000e–3(a).

With respect to the second prong of his prima facie case of retaliation, Plaintiff alleges that he suffered various adverse employment actions as a result of filing an EEOC Charge. In his Complaint, Plaintiff states that the Agent Assessment review on February 16, 1999 and the Job in Jeopardy letter that he received on March 22, 1999 were both in retaliation for his filing an EEOC Complaint on February 9, 1999. (Compl.¶ 9(w).)

While the Court finds Plaintiff has alleged facts sufficient to support the first two elements of a retaliation claim, the Court is not convinced that Plaintiff has met his burden with respect to the third prong of his prima facie case.

█ The third prong to a retaliation claim is satisfied by evidence that the protected action and the adverse employment action are not totally unrelated. *Meeks v. Computer Assocs. Int'l,* 15 F.3d 1013, 1021 (11th Cir.1994). Plaintiff argues that a causal connection is made because Defendant terminated Plaintiff almost immediately after Plaintiff engaged in the various protected actions. (Pl.'s Resp. to Def.'s Mot. for Summ. J. at 10–11.) However, the expiration of a short time period between the protected activity and the adverse action alone does not necessarily provide such a link. *See Booth v. Birmingham News Co.,* 704 F.Supp. 213, 215 (N.D.Ala.), *aff'd,* 864 F.2d 793 (11th Cir. 1988).

█ Assuming arguendo that Plaintiff did meet his prima facie case, the application of the *McDonnell Douglas* analysis discussed with respect to Plaintiff's disparate treatment claim applies here as well. As discussed with respect to Plaintiff's religious discrimination claim, Defendant has met its burden by putting forth evidence of Plaintiff violating company policy on twelve occasions between February and July 1999, which is a legitimate, nondiscriminatory reason for Defendant's actions. The Standards specifically provide that failure to comply is grounds for discipline. Plaintiff's final Job in Jeopardy Notification was issued on July 22, 1999 as a result of his failure to comply with the designated office hours. The following weekend, while on probation, Plaintiff once

again failed to maintain Sunday office hours.

In the final stage of the analysis, Plaintiff must present evidence that Defendant's legitimate, nondiscriminatory reason was a pretext for retaliation. *See Burdine*, 101 S.Ct. at 1095. Plaintiff has presented no evidence that suggests that Defendant's stated reasons for issuing the Agent Assessment, the Job in Jeopardy Notifications, and ultimately terminating Plaintiff were not the real reasons or that discrimination or retaliation was the real reason. In the absence of such evidence, Plaintiff's retaliation claim fails. Thus, as Plaintiff failed to carry either his initial burden or his ultimate burden under Title VII, the Court grants summary judgment to Defendant with respect to Plaintiff's retaliation claim.

### C. Plaintiff's Theft of Services Claim—Fair Labor Standards Act

The Fair Labor Standards Act of 1938 ("FLSA") established minimum labor standards in order to eradicate "labor conditions detrimental to the maintenance of the minimum standard of living necessary for health, efficiency, and general well-being of workers." 29 U.S.C.A. § 202(a) (1998). Under Section 7 of the FLSA, covered employees must be paid at one and one-half times their regular rate of pay for hours worked in excess of forty in a workweek. 29 U.S.C.A. § 207. However, Section 13(a)(1) of the FLSA exempts those employees "employed in a bona fide executive, administrative, or professional capacity ... as such terms are defined ... by ... the Secretary." 29 U.S.C.A. § 213(a)(1).

▉ Defendant submits that Plaintiff was exempt under this "administrative exemption." The Department of Labor's regulations and interpretations set forth the requirements of the administrative exemption. *See* 29 C.F.R. § 541.2 (2001). This regulation outlines a short and a long test for determining whether an employee qualifies for the administrative exemption; the short test is used for employees whose salaries are more than $250 per week. 29 C.F.R. § 541.2(e)(2). As Plaintiff received a guaranteed minimum compensation of $1,500 per month, the short test applies. (Pl. Dep. at 32–33, 278; King Aff. ¶ 6.)

The term "employee employed in a bona fide ... administrative ... capacity" in Section 13(a)(1) of the FLSA is defined by the regulations, in pertinent part, as any employee:

(a) Whose primary duty consists of either: (1) The performance of office or nonmanual work directly related to management policies or general business operations of his employer or his employer's customers, or (2) The performance of functions in the administration of a school system ...; and

(b) Who customarily and regularly exercises discretion and independent judgment; and

(c)(1) Who regularly and directly assists a proprietor, or an employee employed in a bona fide executive or administrative capacity ..., or (2) Who performs under only general supervision work along specialized or technical lines requiring special training, experience, or knowledge, or (3) Who executes under only general supervision special assignments and tasks...

29 C.F.R. § 541.2.

### 1. Work Directly Related to Management Policies or General Business Operations

Under the first prong of the test, Plaintiff's primary duty must be office or

nonmanual work directly related to management policies or general business operations of Allstate or its customers. Plaintiff's duties included (1) representing the company and handling PR; (2) selling Allstate products; (3) providing assistance to customers with claims issues; (4) marketing Allstate products; and (5) directing the day-to-day affairs of his office. (Pl. Dep. at 72–77, 82, 88–91, 95, 160–61; King Aff. ¶ 7.) There is no dispute that Plaintiff's duties are "office or nonmanual work;" the issue before the Court is whether Plaintiff's primary duty is "directly related" to Allstate's management policies or general business operations. The regulations further define the first prong of the test:

> The phrase "directly related to management policies or general business operations of his employer or his employer's customers" describes those types of activities relating to the administrative operations of a business as distinguished from "production" or, in a retail or service establishment, "sales" work. In addition to describing the types of activities, the phrase limits the exemption to persons who perform work of substantial importance to the management or operation of the business of his employer or his employer's customers.

29 C.F.R. § 541.205(a). Thus, this requirement is met if Plaintiff's duties fall on the administrative rather than the production side of the business and if these duties are of "substantial importance" to the business' operations.

#### a. Work was Administrative in Nature

Plaintiff claims he was on the "production" rather than the "administrative" side of Allstate's business. "Administrative operations" of a business are defined in the regulations as including "the work performed by so-called white-collar employees engaged in 'servicing' a business as, for, example, advising the management, planning, negotiating, representing the company, purchasing, promoting sales, and business research and control." 29 C.F.R. § 541.205(b). By contrast, employees work on the production side of the business if they "produce the commodity or commodities, whether goods or services, that the enterprise exists to produce and market." *Dalheim v. KDFW–TV,* 918 F.2d 1220, 1230 (5th Cir.1990).

Whether the product in this case is the insurance policy or the actual sale of the policy determines whether Plaintiff worked on the production or administrative side of Allstate's business. In *Reich v. John Alden Life Insurance Co.,* 126 F.3d 1 (1st Cir.1997), the court found that marketing representatives, employed by a life insurance company, satisfied the administrative exemption. The court explained that the insurance company was in the business of designing, creating, and selling insurance policies to the public, and that the "products" of the company were the policies themselves. *Id.* at 9. The court noted that the marketing representatives were "in no way involved in the design or generation of insurance policies, the very product 'that the enterprise exists to produce and market,'" and thus could not be considered "production" employees. *Id.* (citing *Dalheim,* 918 F.2d at 1230).

While the duties of the marketing representatives in *John Alden* are similar to Plaintiff's duties, one important distinction exists. The marketing representatives in *John Alden* did not sell the insurance policies to the end purchaser, the future policy holders. Instead, the marketing representatives contacted independent insurance

agents who acted as an intermediary between the marketing representative and the end purchaser. Thus the marketing representatives had discretion in choosing which agents to contact and concerning which products to discuss with each agent. A federal district court for the District of Minnesota recently found this distinction significant enough to result in the court finding that the administrative exemption did not apply to loan originators of Conseco, a finance company engaged in the business of designing, creating, and selling lending products such as home improvement loans, home equity loans, and mortgages. *Casas v. Conseco Fin. Corp.*, 2002 WL 507059, at *8–10 (D.Minn. Mar.31, 2002). The job duties of the loan originators included using internal leads provided to them by Conseco to make telephone contact with potential customers. *Id.* at *1. Using Conseco's guidelines and standard operating procedures, the loan originators matched the customer's needs with one of Conseco's loan products and obtained information to complete a loan application. The court in *Conseco* distinguished *John Alden*, stating that the loan originators were employed to make direct sales of loans to individual customers, unlike the marketing representatives in *John Alden* whose primary duty was to market John Alden products to an independent sales force. *Id.* at *8–9.

However, even though Plaintiff sells Allstate insurance products to the end purchaser, the actual policy holder, this Court does not believe that this distinction results in Plaintiff being a production employee instead of an administrative employee. The court in *John Alden* noted that the marketing representatives had to anticipate the competitive products that the end purchasers were considering and distinguish John Alden's offerings from those of competitors. 126 F.3d at 11. Thus, even though the marketing representatives did not have actual contact with the end customers, their duties were not significantly different than the duties of those who do have customer contact. Thus, this Court declines to interpret this difference as resulting in Plaintiff not being an administrative employee.

In addition, Plaintiff's duties are more extensive and involve more discretion than the loan originators in *Conseco*. During his deposition, Plaintiff described his duties and responsibilities as an Allstate agent: "I was a representative of the company. I sold their products, provided claims help, sold insurance, provided PR. Whatever was ... required to do as an agent to build a ... profitable book of business, I tried to do that."(Pl. Dep. at 82.) Plaintiff testified about his duties when prospective customers would call and ask for a quote, "As an agent, I would have to sell myself. I would sell Allstate as a company, and then would make a decision, based on what their current coverages were, if they thought they could do business with me and Allstate." (Pl. Dep. at 83.)

Based on the Court's review of Plaintiff's duties, the Court believes that the analysis by the First Circuit in *John Alden* correctly interprets the administrative exemption and the regulations that describe it. Thus, the Court finds that Plaintiff is an administrative employee and not a production employee.

### b. Substantial Importance to Management or Operations

In addition to objecting to Defendant's classification of Plaintiff as an administrative rather than a production em-

ployee, Plaintiff also claims that his work is not of substantial importance to Allstate, stating that "any one piece of business that an agent might be working on cannot be of 'substantial importance' to the country's 2nd largest property and casualty insurance company." (Pl.'s Mem. Supp. Summ. J. at 10.) Plaintiff misunderstands work of "substantial importance." The regulations provide that when determining whether an employee's work affects business operations to a substantial degree:

> [i]t should be noted in this connection that an employer's volume of activities may make it necessary to employ a number of employees in some of these categories. The fact that there are a number of other employees of the same employer carrying out assignments of the same relative importance or performing identical work does not affect the determination of whether they meet this test so long as the work of each such employee is of substantial importance to the management or operation of the business.

29 C.F.R. § 541.205(c)(6). In assessing whether work is of "substantial importance," it is "necessary to look at 'the *nature* of the work, not its ultimate consequence.'" *John Alden,* 126 F.3d at 11 (quoting *Clark v. J.M. Benson, Co.,* 789 F.2d 282 (4th Cir.1986)) (emphasis in original). Thus, it is immaterial that Plaintiff performed work similar to other Allstate agents and that Allstate is a large company. Plaintiff represented Allstate in the market and was required to be knowledgeable about the market and the needs of actual and potential customers; Plaintiff advised customers on Allstate's products based on their needs and used his knowledge of Allstate's products to promote and close transactions. The Court finds that

Defendant has met its burden in proving that Plaintiff's work is of substantial importance. *See John Alden,* 126 F.3d at 11 (finding marketing agents with similar duties as Plaintiff met the "substantial importance" test).

**2. Discretion and Independent Judgment**

 To qualify for the second prong of the short test of the administrative exemption, Allstate must prove that Plaintiff engaged in work that requires the exercise of discretion and independent judgment. 29 C.F.R. § 541.2(e). The regulations provide:

> In general, the exercise of discretion and independent judgment involves the comparison and the evaluation of possible courses of conduct and acting or making a decision after the various possibilities have been considered. The term as used in the regulations in Subpart A of this part, more over, implies that the person has the authority or power to make an independent choice, free from immediate direction or supervision and with respect to matters of significance.

29 C.F.R. § 541.207(a). There is no requirement that all or even most of Plaintiff's work involve discretion and independent judgment; the employee's work need only include use of discretion or independent judgment. *Shillinglaw v. Sys. Works, Inc.,* 1993 WL 603289 at *4–5 (N.D.Ga. Nov.8, 1993); *Dymond v. United States Postal Serv.,* 670 F.2d 93, 95 (8th Cir.1982) (finding that "where an employee's salary exceeds $250.00 per week, that requirement is reduced to requiring that the employee's primary duty simply 'includes work requiring the exercise of discretion and judgment.'").

Upon reviewing the evidence presented by the parties, the Court finds that Plain-

tiff's work involved discretion and independent judgment. For example, Plaintiff hired a part time employee for four months in 1999. Plaintiff negotiated her hourly rate and the hours that she would work. (Pl. Dep. at 71, 79.) While Plaintiff never gave her a pay raise, Plaintiff concedes that he could have made the decision to give her a pay raise. (Pl. Dep. at 72.)

In addition, Plaintiff's sales efforts also show discretion and independent judgment. Plaintiff interacted with clients in order to provide quotes and product information, processed applications for new insurance, underwrote policies, reviewed existing policies, sold renewals, amended policies, collected and accounted for premium payments, worked with clients on initiating claims and entered the information into Allstate's computer system. (Pl.'s Mem. Supp. Summ. J. at 4.) Plaintiff testified with regard to his sales and marketing activities, stating that during the sales process he determined the products and coverages that he would recommend and emphasize to customers; he used his own personal sales techniques to promote and close transactions. (Pl. Dep. at 83, 89–91.) Plaintiff stated, "There was never a one-size-fits-all of me." (Pl. Dep. at 89.)

The Court finds that Defendant has met its burden in proving that Plaintiff's work required discretion and independent judgement. Thus, Allstate has satisfied its burden of showing that Plaintiff met all of the requirements for the administrative exemption under Section 13(a) of the FLSA. Accordingly, the Court grants summary judgment to Defendant with respect to Plaintiff's theft of services claim.

### D. Plaintiff's State Law Claims

■ Plaintiff claims that his Complaint contained claims for breach of the implied covenant of good faith and fair dealing, intentional misrepresentation, negligent misrepresentation, tortious interference with contract, and wrongful discharge. (Pl.'s Resp. to Def.'s Mot. for Summ. J. at 11–15.) In Plaintiff's Amended Complaint titled "State Complaints Pursuant to 28 U.S.C.A. § 1367 Supplemental Jurisdiction," Plaintiff listed four separate causes of action as Counts One through Four. These four counts have been addressed by this Court. The Court will not permit Plaintiff to allege that other causes of actions listed in the factual allegations section of the Amended Complaint were properly pled. Rule 10(b) of the Federal Rules of Civil Procedure provide how causes of action should be pled:

> All averments of claim or defense shall be made in numbered paragraphs, the contents of each of which shall be limited as far as practicable to a statement of a single set of circumstances; and a paragraph may be referred to by number in all succeeding pleadings. Each claim founded upon a separate transaction or occurrence and each defense other than denials shall be stated in a separate count or defense whenever a separation facilitates the clear presentation of the matters set forth.

Fed. R. Civ. Pro. 10(b). Considering Plaintiff listed four counts containing four causes of action, the Court will not permit Plaintiff to now claim that he pled other causes of actions as well, even though he did not list them as counts. The Court rejects Plaintiff's argument, as it violates the procedure set forth in Rule 10(b). *See Benoit v. Ocwen Fin. Corp.*, 960 F.Supp. 287 (S.D.Fla.1997), *aff'd*, 162 F.3d 1177 (11th Cir.1998). The Court finds that no state law claims remain.

### III. CONCLUSION

Defendant's Motion to Strike (Tab # 84) is **GRANTED** with respect to Plaintiff's

summary judgment motion being untimely, **DENIED** with respect to the fact that this Court still considered the merits of Plaintiff's Motion for Summary Judgment since the Court treated it as a response to Defendant's Motion for Summary Judgment, and **MOOT** with respect to whether certain documents and witnesses relied on by Plaintiff in his motion should by stricken.

Plaintiff's Motion for Summary Judgment (Tab # 79) is **DENIED** as untimely, though the Court considered Plaintiff's arguments set forth in his Memorandum in Support of his Motion for Summary Judgment in the Court's decision to **GRANT** Defendant's Motion for Summary Judgment (Tab # 61).[5]

**5.** The Court notes that Defendant filed a timely twenty page Reply even though the Court had not ruled on Defendant's Motion to Exceed Page Limit on Reply to Motion for Summary Judgment (Tab # 86). As Defendant's reasons for requesting a page extension were valid, the Court **GRANTS** the Motion and notes that it considered the Reply in its entirety in its determination as to whether Defendant was entitled to summary judgment.

### JUDGMENT

The Court by Order dated and filed May 10, 2002, having granted Defendant's Motion for Summary Judgment,

JUDGMENT is hereby entered in favor of Defendant and against Plaintiff. Plaintiff shall recover nothing from Defendant. Defendant is also entitled to recover their costs of this action.