John J. KINNEY, Jr., et al.

v.

DISTRICT OF COLUMBIA,
et al., Appellants.

No. 91–7164.

United States Court of Appeals,
District of Columbia Circuit.

Argued Feb. 4, 1993.

Decided June 1, 1993.

Rehearing and Suggestion for
Rehearing En Banc Denied
Aug. 12, 1993.

Karen L. McDonald, Asst. Corp. Counsel, Dist. of Columbia, with whom John Payton, Corp. Counsel, and Charles L. Reischel, Deputy Corp. Counsel, Washington, DC, were on the brief, for appellants. Susan S. McDonald, Washington, DC, entered an appearance for appellants.

Jeremiah A. Collins, with whom George H. Cohen, Washington, DC, was on the brief, for appellees.

Before: WALD, RUTH BADER GINSBURG, and SILBERMAN, Circuit Judges.

Opinion for the Court filed by Circuit Judge SILBERMAN.

SILBERMAN, Circuit Judge:

The District of Columbia appeals from a summary judgment granted against it in favor of a group of firefighters who sought overtime pay and liquidated damages under the Fair Labor Standards Act. We affirm.

## I.

Section 207 of the Fair Labor Standards Act (FLSA or the Act) requires employers, including public sector employers, to pay employees time and a half for overtime work. *See* 29 U.S.C. § 207 (1988). But section 213(a)(1) of the Act exempts from the overtime requirement workers "employed in a bona fide executive, administrative, or professional capacity ... (as such terms are defined and delimited from time to time by regulations of the Secretary [of Labor] ...)." *Id.* § 213(a)(1). The Department of Labor (DOL or Department) has issued regulations defining the employees eligible for the exemption in terms of both their duties and their pay and has specified that to be eligible employees must be paid on a "salary basis." *See* 29 C.F.R. § 541.1(f) (1992).

Appellees, firefighters in the District of Columbia who hold the ranks of Lieutenant, Pilot, Marine Engineer, and Captain, sued the District in November 1988 for unpaid overtime compensation and liquidated damages. Section 216 of the Act grants individual employees the right to sue and makes employers liable not only for overtime but also for an additional equal amount as liquidated damages. 29 U.S.C. § 216(b). The District took the position that appellees were exempt from the overtime requirement as executive, administrative, or professional employees under section 213(a)(1). The firefighter officers claimed, in response, that neither their duties nor their pay structure fell within the specifications of the exemption. Under the District's pay system, if an officer were absent from work for part of a day, and if he did not have sufficient accrued annual leave, sick leave, or compensatory time against which the absence could be charged, his pay would be reduced, in hourly increments, to reflect the absence. And DOL regulations specified that employees whose compensation was subject to reduction for

absences of *less* than a full day did not qualify as salary basis employees and hence were not exempt. *See* 29 C.F.R. § 541.-118(a).

The Department, however, had adopted a nonenforcement policy in 1987 under which it would not apply that regulation defining salaried employees to public employers. Letter Ruling, Department of Labor, Wage and Hour Division (Jan. 9, 1987) *reprinted in* 57 Fed.Reg. 37,666, 37,668 (1992). The Department took that step because when the FLSA was extended to government employers in 1985,[1] many state and local governments had voiced concern about applying the "anti-docking" criteria to public employees. The requirements of section 541.118 were not reliable *indicia* of an employee's status in the public sector, it was argued, because principles of public accountability incorporated in many local statutes and ordinances could be interpreted to require docking for time not worked—even for those who in the private sector would be thought of as senior salaried employees. Still, DOL explicitly stated that its new enforcement policy was "not intended to affect any employee's rights under [section 216(b) ] of FLSA." *Id.* Under that section, as noted above, employees can bring suits for overtime pay directly without the Department's prosecution.

The district court determined that, because of the District's docking practice, appellees were not salaried employees within the meaning of the Department's regulations and granted appellees' motion for partial summary judgment on the issue of liability. *See Kinney v. District of Columbia,* Civ. Act. No. 88–3223, Mem.Op. at 11–13 (D.D.C. Apr. 16, 1991). The court noted also that appellees were subject to detailed timekeeping requirements, *id.* at 12, and were compensated for overtime work by the hour, *id.* at 13, which would independently suggest hourly employee status.

The court then turned to damages. The FLSA provides for liquidated damages in an amount equal to an employee's recovery, *see*

29 U.S.C. § 216(b), but the court "may, in its sound discretion," refuse to award liquidated damages if the court believes that an employer acted "in good faith and that he had reasonable grounds for believing that his act or omission was not a violation" of the Act. *Id.* § 260. The District argued that it was entitled to an exercise of the district judge's discretion because it had consulted with experts concerning the implementation of the FLSA, and because there was supposedly considerable uncertainty concerning the appropriate application of the Department's regulation to public employers. The district judge rejected these contentions. *See Kinney v. District of Columbia,* Civ. Act. No. 88–3223, Mem.Op. (D.D.C. Sept. 13, 1991).

After the district court's decision and while the District's appeal was pending, the Department changed its regulation once again. On August 19, 1992 the Secretary issued a new regulation that made section 541.118(a) substantially inapplicable to public employers who are bound by law to dock employees for partial-day absences. *See* 57 Fed.Reg. 37,-666. The Secretary explained in the accompanying commentary that otherwise virtually all public employers would not, as a practical matter, be able to take advantage of the overtime exception for salaried employees. That result, the Secretary thought, would be "out of harmony with the intent of the statute." *Id.* at 36,677.

## II.

### A.

The District of Columbia seeks to take advantage of the Department's recent regulatory change by claiming, for the first time on appeal, that the Department's anti-docking regulation (as it existed prior to the August 1992 revision) is *ultra vires* as applied to public employers. Paralleling the reasoning the Department used in revising the regulation, the District claims that if the anti-docking requirement were applied to

---

1. When Congress first attempted to extend the statute to state and local governments in 1974, the Supreme Court declared the law unconstitutional. *See National League of Cities v. Usery,* 426 U.S. 833, 96 S.Ct. 2465, 49 L.Ed.2d 245

(1976). Only when the Court reversed course in *Garcia v. San Antonio Metro. Transit Auth.,* 469 U.S. 528, 105 S.Ct. 1005, 83 L.Ed.2d 1016 (1985), did the statute finally come into force over state and local public sector employers.

public employers—making the salary exception effectively unavailable to them—congressional intent in extending the FLSA to public employers in 1974 would be frustrated. The District cannot point successfully, however, to any "exceptional circumstance[ ]" to justify a departure from our rule that we will not hear an argument made for the first time on appeal. *See Roosevelt v. E.I. Du Pont de Nemours & Co.*, 958 F.2d 416, 419 n. 5 (D.C.Cir.1992); *see also Singleton v. Wulff*, 428 U.S. 106, 120, 96 S.Ct. 2868, 2877, 49 L.Ed.2d 826 (1976) (stating that an appellate court generally will not consider questions not raised below).

To be sure, we have indicated that we might entertain a new argument on appeal if it were justified by, *inter alia*, an intervening change in the law, *see, e.g., Roosevelt*, 958 F.2d at 419 n. 5; *United States v. Byers*, 740 F.2d 1104, 1115 n. 11 (D.C.Cir.1984) (en banc)—such as a Supreme Court decision that could be thought to alter substantially the legal framework that governed the appeal. The District argues that the new Labor Department regulation is just such a change. But by the term "intervening change in the law," we were not referring to a prospective change that could not affect rights already accrued, and the 1992 DOL regulatory revision implemented only a prospective change. Indeed, the Department withdrew a draft of the regulation that would have altered the application of section 514.118 retroactively, because it concluded that such a change would have constituted invalid retroactive rulemaking under *Bowen v. Georgetown University Hospital*, 488 U.S. 204, 109 S.Ct. 468, 102 L.Ed.2d 493 (1988). *See* 57 Fed.Reg. 37,678 (1992) (withdrawing a notice of proposed rulemaking originally published at 56 Fed.Reg. 45,828 (1991)).

The Department, in promulgating the 1992 regulation, did say that section 541.118, as applied to most public sector employees, was "out of harmony with the intent of the statute," 57 Fed.Reg. at 37,672, and "inconsistent with Congressional intent," *id.* at 37,673. But such statements cannot be taken to mean, as the District of Columbia contends, that DOL declared its own regulation contrary to the statute and invalid *ab initio*.

Besides making it clear that it was acting only prospectively, the Department explicitly relied on its discretionary policymaking authority to "define and delimit" the scope of the section 213(a)(1) exemption. The Secretary noted that section 213(a)(1) left the agency "free to revisit and revise its regulations in the future based on its enforcement experiences," 57 Fed.Reg. at 37,672, and explained that "[i]n light of the court decisions and representations by affected parties, the Department has determined that strictly applying all aspects of the salary basis rule to the public sector under section [2]13(a)(1) has produced results that do not effectuate the intended purposes of the Act," *id.* at 37,672–73. That language certainly suggests that DOL was formulating new regulatory law for public sector employers—albeit new regulatory law that the Department thought was more faithful to Congress' original intent.

It seems apparent that DOL's 1992 regulation served only to alert appellants to the viability of an argument that might originally have seemed unconvincing. Nothing prevented the District from asserting, in 1988, that, as applied to government employees, section 541.118 was contrary to the statute based on the legislative history of 1974. Therefore, we will not entertain the District's challenge to section 541.118.

### B.

■ The District's original defense to liability (assuming the validity of the Department's pre–1992 regulation) is reiterated before us as a secondary argument. In assessing that argument, we review the district court's grant of summary judgment *de novo. See, e.g., Yamaha Corp. of America v. United States*, 961 F.2d 245, 253–54 (D.C.Cir.1992), *cert. denied* — U.S. —,. 113 S.Ct. 1044, 122 L.Ed.2d 353 (1993). The District, of course, had the burden of showing that its employees are exempt from the FLSA's overtime provisions. *See Corning Glass Works v. Brennan*, 417 U.S. 188, 196–97, 94 S.Ct. 2223, 2229, 41 L.Ed.2d 1 (1974). But the District contends that it was error to decide that appellees failed the salary basis test under section 541.118(a) merely because the District had a policy that *theoretically*

would subject them to docking for partial-day absences. According to the District, the district court should have required a showing that some employees actually had suffered such a loss of pay. *See, e.g., Atlanta Professional Firefighters Union, Local 134 v. City of Atlanta*, 920 F.2d 800, 805 (11th Cir.1991).[2]

The application of section 541.118(a) to governmental employers has given rise to a sharp split in decisions, both between the district judges in this circuit, *compare Harris v. District of Columbia*, 709 F.Supp. 238, 241 (D.D.C.1989) (requiring a showing of actual deductions for partial-day absences) *and District of Columbia Nurses' Ass'n v. District of Columbia*, No. 87-1675, 1988 WL 156191 at *2, 1988 U.S.Dist. LEXIS 16,500 at *5 (D.D.C. Jan. 28, 1988) (same) *with D'Camera v. District of Columbia*, 693 F.Supp. 1208, 1212 (D.D.C.1988) (requiring that pay simply be "subject to" reduction), and between circuits, *compare Atlanta Firefighters, supra, with Abshire v. County of Kern*, 908 F.2d 483, 487 (9th Cir.1990), *cert. denied*, 498 U.S. 1068, 111 S.Ct. 785, 112 L.Ed.2d 848 (1991). We agree with the district court in this case and the Ninth Circuit in *Abshire*, however, that the critical question under section 541.118(a) is whether employees are "subject to" docking for partial-day absences.[3]

The language of the governing Department regulation focuses on whether the employees' pay can be docked, not whether it actually has been docked. Thus, the section states that an employee is considered paid on a salary basis if he receives in each pay period a predetermined amount "constituting all or part of his compensation, which amount is not *subject to reduction* because of variations in the quality or quantity of the work performed." 29 C.F.R. § 541.118(a) (emphasis added). The regulation is intended, after all, to divide employees into classes based on their status, not to identify employees deserving compensation for individual losses. Payment on salary basis is thought to identify executive, administrative, and professional personnel precisely because it indicates employees who are given discretion in managing their time and their activities and who are not answerable merely for the number of hours worked or number of tasks accomplished.[4] Employees paid under a system that subjects them, even theoretically, to docking for absences by the hour lack one of the characteristics explicitly identified in the Department's regulation on salaried pay.[5]

---

**2.** The District's policy is clear, and there is no suggestion that an application of the policy in an actual case would be needed to clarify an ambiguity. Thus, we do not face the question confronted by the Sixth Circuit in *Michigan Ass'n of Governmental Employees v. Michigan Department of Corrections*, 992 F.2d 82 (6th Cir.1993).

**3.** The district court also noted other factors that suggested that appellees were not salaried employees. *See, e.g., Kinney*, Mem.Op. at 13 ("[P]laintiffs are treated like hourly employees in nearly every respect."). The court found that appellees were compensated for overtime (although not necessarily with time and a half pay). Indeed, the record suggests that appellees recorded their overtime in six-minute intervals. That practice has been held to be inherently inconsistent with compensation on a salary basis. *See Abshire*, 908 F.2d at 486; *Brock v. Claridge Hotel and Casino*, 846 F.2d 180, 184–85 (3d Cir.), *cert. denied*, 488 U.S. 925, 109 S.Ct. 307, 102 L.Ed.2d 326 (1988). *But see Hartman v. Arlington County*, 720 F.Supp. 1227, 1229 (E.D.Va. 1989), *aff'd*, 903 F.2d 290 (4th Cir.1990). We do not need to resolve this question in light of the district court's square reliance on the anti-docking regulation.

**4.** In holding that the regulatory phrase "subject to reduction" means what it says, we intimate no view on the question the District sought belatedly to raise in this case, whether the Department's pre–1992 "subject to reduction" standard as applied to public employees is a legitimate exercise of its regulatory authority under the Act.

**5.** In deciding that an employer falls afoul of section 541.118(a)'s salary basis test only when it actually docks employees' pay, some of our district judges have relied on section 541.118(a)(6) of the regulations. *See, e.g., Harris*, 709 F.Supp. at 241. That section states: "The effect of making a deduction which is not permitted under these interpretations will depend upon the facts in the particular case.... [W]here a deduction not permitted by these interpretations is inadvertent ... the exemption will not be considered to have been lost if the employer reimburses the employee...." The regulation addresses only the situation in which an actual deduction has been made and merely provides an escape clause for employers who inadvertently make improper deductions. That the effect of an actual deduction must be assessed based on "the facts in the particular case," however, in no way suggests that an actual deduction is a prerequisite in every case for an employer to fail the salary basis test.

**12**

## C.

There remains the issue of liquidated damages. Section 216(b) of the Act, it will be recalled, makes any employer who violates the Act liable to employees not only for their unpaid overtime, but also for "an additional equal amount as liquidated damages." 29 U.S.C. § 216(b). Under section 260, the district court has discretion *not* to award liquidated damages *only* if the employer shows that it acted in good faith and on a reasonable belief that it was not violating the statute. *See id.* § 260. In the compensation scheme of the FLSA, "double damages are the norm, single damages the exception," *Walton v. United Consumers Club, Inc.*, 786 F.2d 303, 310 (7th Cir.1986), and an employer who has violated the Act bears a "substantial burden" of proving that he acted in good faith and on a reasonable belief that he was in compliance. *Laffey v. Northwest Airlines, Inc.*, 567 F.2d 429, 464–65 (D.C.Cir.1976) (citation omitted), *cert. denied,* 434 U.S. 1086, 98 S.Ct. 1281, 55 L.Ed.2d 792 (1978).

The district judge's refusal to exercise his discretion comes to us on appeal from summary judgment—that is, on agreed upon facts. The parties agree that under these circumstances our review is limited to clear error. *See Laffey,* 567 F.2d at 464 (stating that because determinations of good faith and reasonable belief usually involve findings of fact, clear error standard applies). It may well be, although it is not argued, that the proper standard of review is abuse of discretion. *Cf. Pierce v. Underwood,* 487 U.S. 552, 558–63, 108 S.Ct. 2541, 2546–49, 101 L.Ed.2d 490 (1988). The standard of review does not really matter in this case, however, for we would affirm even if we reviewed the district judge *de novo.*

Good faith requires only a showing that the employer subjectively acted with an "honest intention to ascertain what the ... Act requires and to act in accordance with it," *Laffey,* 567 F.2d at 464 (footnote omitted). The District contends that it made a

good faith effort to ensure compliance with the FLSA by consulting with DOL, the National League of Cities, its own Office of Corporation Counsel, and even its accountants, Price Waterhouse, concerning the implementation of the FLSA. As the district court pointed out, however, "the District has not specifically alleged that it even discussed the applicability of [section 541.118(a) ] with any of the entities with whom it consulted." *Kinney,* Mem.Op. at 8. Although reliance on opinion letters from counsel can show a good faith effort to comply with the statute, *see, e.g., Hultgren v. County of Lancaster,* 913 F.2d 498, 509 (8th Cir.1990), courts generally appear to have required a showing that the employer received advice on the specific compliance issue in question, not just that he sought advice about the statute, *see id.* n. 7.

We need not determine whether the district court was correct in deciding that the District lacked good faith,[6] because the District has failed to show that it had a reasonable basis for believing that section 541.118 did not apply to it. The reasonable belief requirement is an objective test. *See Laffey,* 567 F.2d at 464. The District does not contend that it received any specific advice that the section did not apply. It does claim that it relied in part on Office of Personnel Management (OPM) regulations that implemented the FLSA for the federal government and contained no salary basis test. *See* 5 C.F.R. § 551. But the OPM regulations apply by their terms only to federal employees. They are even based on a separate grant of rulemaking authority in the Act. *See* 29 U.S.C. § 204. Appellants, therefore, had no reasonable basis for thinking that OPM's regulations either applied to it or modified the application of DOL's regulations.

The District points to what it claims was a general uncertainty about the application of the salary basis test to governmental employers. In its view, the nonenforcement policy adopted by DOL in 1987 generated this uncertainty, and the change in regula-

---

6. Appellant contends that the district court did not reach a conclusion on the issue of good faith and that it instead decided only that the District lacked a reasonable belief that it was in compliance with the statute. Although the district court

was certainly more explicit in stating its conclusion on the reasonable belief question, the court addressed good faith at length and its reasoning makes clear that it considered the District to have failed both tests.

tions in 1992 merely "confirmed" that the District had been correct in thinking that the regulation should not apply to it and other municipalities. Although it is true that uncertainty in the state of the law can support an employer's contention that it acted on a reasonable belief that it was complying with the statute, as we said in *Laffey*, "legal uncertainty, to assist the employer's defense, must pervade and markedly influence the employer's belief." *Laffey*, 567 F.2d at 466. The employer must show that " 'the absence of precise legal guidelines' was in fact the 'condition [that] actually led.[the employer] to believe that it was in compliance with the [Act].' " *Laffey v. Northwest Airlines, Inc.*, 740 F.2d 1071, 1096 n. 38 (D.C.Cir.1984) (*Laffey II*) (quoting *Laffey I*, 567 F.2d at 466).

None of the factors the District refers to should have caused uncertainty about the application of section 541.118(a), certainly not uncertainty that could have affected the formulation of the District's pay systems. The 1992 revised regulation not only appeared years after the District had already set its policy for compensating appellees, but it also provided no reasonable basis for confusion concerning the prior understanding of section 541.118(a). In 1992, as we have emphasized, DOL changed the law only prospectively; it did not purport to affect in the slightest the law regulating public employers prior to 1992. Even the 1991 proposed rule that would have lifted the anti-docking regulation retroactively (and which was subsequently withdrawn), was not published until September 6, 1991, four months after the initial decision in this case and years after appellees' pay system had been set in place. The District is in no stronger position in relying—to show legal uncertainty—on the earlier (1987) Departmental nonenforcement policy announcement. At the time, DOL explicitly stated that the policy applied only to DOL enforcement actions and that it was "not intended to affect any employee's rights under [section 216(b) ] of the FLSA." Letter Ruling, Department of Labor Wage and Hour Administration (Jan. 9, 1987), *reprinted in* 57 Fed.Reg. 37,666, 37,668 (1992). The Department even noted that the practice followed by many public employers of docking employees for partial-day absences was "con-trary to the position in Section 541.118 that deductions may be made only for absence(s) of a day or longer." *Id.* Moreover, just seven days after announcing the policy, DOL issued regulations concerning implementation of the Act as applied to state and local governments and stated that an employee would qualify for an exemption under section 213(a)(1) if he or she "[met] *all* of the pertinent tests relating to duties, responsibilities, *and salary.*". 52 Fed.Reg. 2012, 2038 (1987) (emphasis added).

Nor did the split in judicial decisions applying section 541.118(a) provide the District a reasonable basis for its policy. The first case to hold that an employer ran afoul of section 541.118(a) only when he actually docked employees was not decided until January 1988, well after the District had established the policies that controlled appellees' pay. *See District of Columbia Nurses Ass'n v. District of Columbia*, No. 87–1675, 1988 WL 156191, 1988 U.S.Dist. LEXIS 16500 (D.D.C. Jan. 28, 1988). Although the suit may have been commenced considerably earlier, the filing of a lawsuit hardly shows pervasive uncertainty in the law, especially when the District itself was a party to the litigation.

\* \* \* \* \* \*

For the foregoing reasons, the judgment of the district court is affirmed.