John HOGAN; Leanne McCurley; Preston Partain; Mark Stephen Harrell; and Daniel Mink, Plaintiffs,

v.

ALLSTATE INSURANCE COMPANY, Defendant.

No. 8:00–CV–2562–T–30TGW.

United States District Court,
M.D. Florida,
Tampa Division.

June 25, 2002.

David Borgen, Aaron Kaufmann, Joe Jaramillo, Saperstein, Goldstein, Demchak & Baller, Oakland, CA, Sam J. Smith, Stacy Klein Verde, Burr & Smith, LLP, Tampa, FL, for plaintiffs.

Joel M. Cohn, Robert G. Lian, Jr., Akin, Gump, Strauss, Hauer & Feld, Washington, DC, Jeffrey P. Diamond, Rumberger, Kirk & Caldwell, P.A., Tampa, FL, Lori J. Caldwell, Charles P. Mitchell, Rumberger, Kirk & Caldwell, P.A., Orlando, FL, for defendant.

## ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

MOODY, District Judge.

This cause came on for consideration upon Defendant's Motion for Summary Judgment (Dkt.# 67), Plaintiff's Motion for Partial Summary Judgment (Dkt.# 70) and the responses thereto. Having considered the Motions, responses, and having conducted an independent review of the case file, the Court concludes the Defendant's Motion for Summary Judgment should be granted.

## I. FACTUAL BACKGROUND

Plaintiffs James Cirillo, Mark Stephen Harrell, John Hogan, Leanne McCurley, Alan Pace, and Dale Villemain (collectively "test plaintiffs") are licensed insurance agents, called Neighborhood Office Agents (NOAs), engaged in the business of selling, servicing, and promoting insurance products of Allstate Insurance Company (Defendant or Allstate). The NOAs are treated as employees by Allstate for tax purposes. Plaintiffs operate out of their own office or one shared with another NOA. Defendant manages its NOAs principally through Agency Managers (AMs). AMs do not monitor the day-to-day activities of the NOAs unless an AM is in the NOA's office. (Parties' Jnt Stip Facts p. 1). None of the Plaintiffs have an AM in their office. However, AMs do monitor NOAs level of sales. *Id.*

NOAs receive as compensation a percentage of the revenue generated as a result of sales or renewals of Allstate insurance and financial products with a guaranteed monthly minimum compensation. The monthly minimum from December 1997 through 1998 was $740. Effective January 1999, the monthly minimum was raised to $1,500. NOAs are paid the guaranteed monthly minimum amount if

their compensation earned from commissions is less than the guaranteed monthly minimum in effect at the time. The test plaintiffs' commission earnings were always in excess of the guaranteed monthly minimum amount in all months during the proposed liability period.

On average NOAs earned $102,000 total annual compensation ($8,500 per month) in 1999. The test plaintiffs earned, on average, $122,700 in total annual compensation ($10,255 per month) during the period December 1997 through June 2000. NOAs were also provided an Office Expense Allowance (OEA) by Defendant that was determined as a percentage of each NOA's yearly commission. Each NOA was free to spend their OEA for any office related expense such as staff wages, advertising, rent and bills. If and when expenses exceeded the OEA, the NOAs paid them from their personal funds.

Test plaintiff James Cirillo (plaintiff Cirillo) earned as an NOA an average monthly compensation of $10,210 per month during the period of December 1997–June 2000. In addition plaintiff Cirillo received an OEA of approximately $39,900 annually during the period of 1997–2000.

Test plaintiff Mark Stephen Harrell (plaintiff Harrell) earned as an NOA an average monthly compensation of $9,650 per month during the period of December 1997–June 30, 2000. In addition plaintiff Harrell received an OEA of approximately $19,700 annually during the period of 1997–2000.

Test plaintiff John Hogan (plaintiff Hogan) earned as an NOA an average monthly compensation of $4,670 per month during the period of December 1997–June 30, 2000. In addition plaintiff Hogan received an OEA of approximately $14,400 annually during the period of 1997–2000.

Test plaintiff Leanne McCurley (plaintiff McCurley) earned as an NOA an average monthly compensation of $4,970 per month during the period of December 1997–June 30, 2000. In addition plaintiff McCurley received an OEA of $11,454 in 1999 and $8,528 in 2000.

Test plaintiff Alan Pace (plaintiff Pace) earned as an NOA an average monthly compensation of $21,340 per month during the period of December 1997–June 30, 2000. In addition plaintiff Pace received an OEA of $55,000 in 1998 and $82,000 in 1999.

Test plaintiff Dale Villemain (plaintiff Villemain) earned as an NOA an average monthly compensation of $10,510 per month during the period of December 1997–June 30, 2000. In addition plaintiff Villemain received an OEA of approximately $25,400 annually during the period of 1997–2000.

Plaintiffs filed a complaint alleging that they are entitled to back wages pursuant to the overtime requirements of the FLSA. 29 U.S.C. § 207. Plaintiffs allege that they are "employees" and thus are covered under the Fair Labor Standards Act (FLSA) and are not exempt employees under FLSA, 29 U.S.C. § 213(1)(a) during the potential liability period of December 1997 through June 2000.

Defendant contends that Plaintiffs are not covered by the Fair Labor Standards Act because they come within the administrative exemption of the Act. Defendant also asserts that prior to 1999, Plaintiffs were independent contractors and are thus outside the scope of the FLSA altogether. Defendant previously took a contrary position on this issue. In an IRS proceeding in June of 1997, Defendant asserted that, for tax purposes, NOAs were employees and not independent contractors.

## II. SUMMARY JUDGMENT STANDARD

Motions for summary judgment should only be granted when the pleadings, depo-

sitions, answers to interrogatories, and admissions on file, together with the affidavits, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The existence of some factual disputes between the litigants will not defeat an otherwise properly supported summary judgment motion; "the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (emphasis in original). The substantive law applicable to the claimed causes of action will identify which facts are material. *Id.* Throughout this analysis, the judge must examine the evidence in the light most favorable to the non-movant and draw all justifiable inferences in her favor. *Id.* at 255, 106 S.Ct. 2505.

Once a party properly makes a summary judgment motion by demonstrating the absence of a genuine issue of material fact, whether or not accompanied by affidavits, the nonmoving party must go beyond the pleadings through the use of affidavits, depositions, answers to interrogatories and admissions on file, and designate specific facts showing that there is a genuine issue for trial. *Celotex,* 477 U.S. at 324, 106 S.Ct. 2548. The evidence must be significantly probative to support the claims. *Anderson,* 477 U.S. at 248–49, 106 S.Ct. 2505 (1986).

This Court may not decide a genuine factual dispute at the summary judgment stage. *Fernandez v. Bankers Nat'l Life Ins. Co.,* 906 F.2d 559, 564 (11th Cir.1990). "[I]f factual issues are present, the Court must deny the motion and proceed to trial." *Warrior Tombigbee Transp. Co. v. M/V Nan Fung,* 695 F.2d 1294, 1296 (11th Cir.1983). A dispute about a material fact is genuine and summary judgment is inap-

propriate if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505; *Hoffman v. Allied Corp.,* 912 F.2d 1379 (11th Cir.1990). However, there must exist a conflict in substantial evidence to pose a jury question. *Verbraeken v. Westinghouse Elec. Corp.,* 881 F.2d 1041, 1045 (11th Cir.1989).

## III. LEGAL ANALYSIS

The FLSA established minimum labor standards in order to eliminate "labor conditions detrimental to the maintenance of the minimum standard of living necessary for health, efficiency, and general well-being of workers." 29 U.S.C. § 202(a). Covered employees must be paid at one and one-half times their regular rate of pay for hours worked in excess of forty in a workweek. 29 U.S.C. § 207. However, those employees who are "employed in a bona fide executive, administrative, or professional capacity ... as such terms are defined ... by ... the Secretary" are exempt. 29 U.S.C. § 213(a)(1). The Court doubts that Congress, when it enacted the FLSA to protect a "minimum standard of living," had in mind employees such as the NOAs that make an average of over $100,000 per year.

Defendant argues that the FLSA does not apply to the Plaintiffs because they fall within the administrative exemption to the Act. The Department of Labor's (DOL) regulations set forth the requirements for the administrative exemption. 29 C.F.R. § 541.2. To fit within the administrative exemption, employees must satisfy both a "salary basis" test and a "duties" test. 29 C.F.R. § 541.

### A. Salary Basis Test

The salary basis test requires that the employer pay an employee a predetermined amount on a weekly or less fre-

quent basis, which amount is not subject to reduction based on the quantity or quality of the work performed. 29 C.F.R. §§ 541.118, 541.212. The salary basis requirement "is thought to identify executive, administrative, and professional personnel precisely because it indicates employees who are given discretion in managing their time and their activities and who are not answerable merely for the number of hours worked or number of tasks accomplished." *Kinney v. District of Columbia,* 994 F.2d 6, 11 (D.C.Cir.1993); see also *Brock v. Claridge Hotel & Casino,* 846 F.2d 180, 184 (3d Cir.1988) ("salary is a mark of [exempt] status because the salaried employee must decide for. himself the number of hours to devote to a particular task"). Defendant required that Plaintiffs keep their office open certain business hours of the day. But Plaintiffs were not required to be present in the office themselves as long as a licensed staff member was present. Therefore, any NOA who employed a licensed staff member was able to set the number of hours that he or she worked. (Plaint. Villemain Depo. p. 90 line 4–14, p. 93, p. 94 line 8–11); (Plaint. Pace Depo. p. 66 line 12–21).

The NOAs' guaranteed monthly minimum was not based upon premium generation or sales goals. (Parties Jnt Stip Facts p. 4). The DOL regulations provide that "(t)he salary basis requirement will also be met by a branch manager who receives a percentage of the sales or profits of the branch, if the employment arrangement also includes a guarantee of at least the minimum weekly salary (or the equivalent for a monthly or other period) required by the regulations." 29 C.F.R. § 541.118(b). This seems to describe the NOA's form of compensation precisely. Undaunted, the Plaintiffs claim that Defendant fails to satisfy the salary basis test for several reasons.

■ First, Plaintiffs assert that the guaranteed minimum compensation amount is so low in relation to the Plaintiffs' actual monthly compensation that the guaranteed minimum amount is merely an "illusion" and should not be given effect. The cases and DOL opinions on which Plaintiffs rely to support this proposition deal with plaintiffs who receive hourly compensation. The present action is distinguishable because the number of hours worked is discretionary and the NOAs' compensation is commission based. Commissions are earned on policy sales and renewals, and do not directly reflect hours worked. The reasonable relationship test is not applicable to the present case because the number of hours that Plaintiffs worked play no role in determining their pay. *Hood v. Mercy Healthcare Arizona,* 23 F.Supp.2d 1125, 1130 (D.Ariz.1997) (rejecting the reasonable relationship test).

Second, Plaintiffs assert that NOAs incur additional expenses (i.e., staff wages, lease payment, utility bills etc.) that exceed the OEA which are not reimbursed by Defendant thereby constituting a constructive deduction from the guaranteed monthly minimum. The Court is not convinced by this argument. Plaintiffs were not required by Defendant to spend more on expenses than was provided for by the OEA, and by no means could these unreimbursed expenses be considered a deduction from the guaranteed monthly minimum. (Plaint. McCurley Depo. p. 77 line 10–25, p. 78 line 1–16); *See Reich v. Japan Enterprises,* 91 F.3d 154 (9th Cir.1996).

Third, Plaintiffs assert that Defendant required the NOAs to reimburse the guaranteed minimum amount from future commissions and therefore could not be considered to be paid "free and clear" under the regulations. A NOA receives as compensation the greater of either commissions earned or the guaranteed minimum

amount. Plaintiffs assert that if the guaranteed minimum amount is paid to the NOA that it must be reimbursed from future commissions in subsequent months. To the contrary, only excess negative premiums were deducted from future commissions. Negative premiums were caused by policy cancellations or other reasons. Clark Tr. At 59:22–60:7. Only the negative compensation that was in excess of the guaranteed monthly minimum was considered unearned compensation, and this amount was recovered only from commission amounts in excess of the guaranteed monthly minimum in subsequent months. See Clark Tr. At 60:8–62:13. The guaranteed monthly minimum was not required to be repaid by the NOAs in subsequent months, therefore this Court considers the guaranteed monthly minimum to be paid free and clear.

Lastly, Plaintiffs assert that Defendant failed to pay a predetermined amount during each pay period. Pursuant to the regulations, when an employee is paid the higher of a monthly minimum guarantee or commissions, the salary basis test is satisfied. Therefore Plaintiff's argument fails as a matter of law.

For the foregoing reasons, the court finds that Plaintiffs' form of compensation satisfies the salary basis test.

### B. Duties Test

In determining whether Plaintiffs fit within the administrative exemption to the FLSA, the Court must next consider whether Plaintiffs' work activities satisfy the "duties" requirements. The "duties" test for the administrative exemption contains both a short and a long test, each of which provides separate criteria. The

short test applies when the employee's salary is in excess of $250 per week; the long test applies where the employee's salary is at least $155 per week. The Plaintiffs' received a guaranteed minimum compensation regardless of how many hours were worked or policies sold. (Parties Jnt Stip Facts). Plaintiffs' guaranteed minimum compensation was $740 per month for the years 1997–98. Therefore the long test applies to those years of the potential liability period. (Parties Jnt Stip Facts p. 4). For the year 1999 and thereafter, the guaranteed monthly minimum was increased to $1,500, therefore the short test applies. *Id.*

Defendant asserts that prior to 1999, Plaintiffs were independent contractors and thus outside the scope of the FLSA altogether. Defendant claims, arguendo, that if this Court determines Plaintiffs not to be independent contractors prior to 1999 that Plaintiffs still satisfy the long test of the administrative exemption [1] for that period and the short test for 1999 and thereafter.

The regulations set forth the short test for an "employee employed in a bona fide ... administrative ..." capacity in section 13(a)(1) and is defined as any employee:

(1) Whose primary duty consists of either: (1) The performance of office or nonmanual work directly related to management policies or general business operations of his employer or his employer's customers ...; and

(2) Includes work requiring the use of discretion or independent judgment.

29 C.F.R. § 541.2.

The long test adds the following requirements:

1. The short test applies where the employee's salary is in excess of $250 per week; the long test applies where the employee's salary is at least $155 per week. NOAs' guaranteed minimum compensation was over $250 per week ($1,500 per month) for the period beginning January 1999. NOAs' guaranteed minimum compensation was over $155 per week but less than $250 ($740 per month) for the period of liability prior to 1999.

(1) performs office or nonmanual work directly related to management policies or general business operations of his employer or his employer's customers; (2) *customarily* and *regularly* exercises discretion and independent judgment; (3)(a) performs under only general supervision work along specialized or technical lines requiring special training, experience, or knowledge, or (b) executes under only general supervision special assignments and tasks; and (4) spends no more than 20 percent of his work hours in the workweek on activities that are non exempt work. 29 C.F.R. § 541.2.

### (a) Work Directly Related to Management Policies or General Business Operations

■ Under the first prong of both the short and long test of the administrative exemption, the Plaintiffs' primary duty must be office or nonmanual work directly related to management policies or general business operations of Allstate or its customers. As to this first prong, the regulations explain:

> The phrase "directly related to management policies or general business operations of his employer or his employer's customers" describes those types of activities relating to the administrative operations of a business as distinguished from "production" or, in a retail or service establishment, "sales" work. In addition to describing the types of activities, the phrase limits the exemption to persons who perform work of substantial importance to the management or operation of the business of his employer or his employer's customers.

29 C.F.R. § 541.205(a). Therefore, if the Plaintiffs' duties fall on the administrative rather than the production side of the business and are of "substantial importance" to the business' operations, then the first prong of the long and short test has been met. *Wilshin v. Allstate Ins. Co.,* —— F.Supp.2d ——, Civil Action No.: 5:99–CV–438–1 (HL), Civil Order File Vol. 84, p. 8588, 2002 WL 1474092 (M.D.Ga. May 10, 2002).

The regulations define administrative duties to include "the work performed by so-called white-collar employees engaged in 'servicing' a business as, for, example, advising the management, planning, negotiating, representing the company, purchasing, promoting sales, and business research and control." 29 C.F.R. § 541.205(b). In contrast, production duties are those instances where it is the employee's job to produce the very product or service that the employer's business offers to the public. See, e.g., *Reich v. New York,* 3 F.3d 581, 587–89 (2d Cir. 1993), *Dalheim v. KDFW–TV,* 918 F.2d 1220, 1230–31 (5th Cir.1990). *Section 541.205(a)* provides that "sales" work that is of a retail or service establishment is not administrative. However, *29 C.F.R. § 779.316* provides that insurance companies are not retail or service establishments within the meaning of the FLSA. Servicing a business can also be considered administrative within the meaning of § 541.205(b) as long as the servicing activities of the employee are clearly ancillary to an employer's principal production activity. *Reich v. John Alden Life Insurance Co.,* 126 F.3d 1, at 9 (1st Cir.1997).

The Plaintiffs described their duties in their depositions. (Cites below concerning the individual Plaintiffs refer to the deposition of each respective plaintiff unless otherwise specified.)

### (i) Plaintiff Harrell

Plaintiff Harrell stated that "(t)he primary function of a Neighborhood Office Agent is to sell and service Allstate products thereby building a quality book of

business." (Depo. p. 207 line 5–7). Plaintiff Harrell promoted salm (Depo. p. 87 line 2–23), advised customers about Allstate insurance products (Depo. p. 93 line 10–25, p. 94 line 1, p. 103 line 23–24, p. 104 line 1–9), and estimated that 90 percent of his duties was servicing existing customers. He described the servicing process as a constant selling scenario to make sure the customer renews. (Depo. p. 97 line 25, p. 99, p. 100 line 1–23). Plaintiff Harrell hired his own employees and determined their rate of pay. (Depo. p. 55, p. 60, p. 58 line 16–25, p. 74 line 5–20).

### (ii) Plaintiff Cirillo

Plaintiff Cirillo, as a representative of the Defendant, decided on how to reach potential customers, provided advice to customers, and adapted policies to customers' specific needs. (Depo. p. 54 line 11–19, p. 92 line 13–25, p. 41 line 17–22, p. 45 line 18–25, p. 46 line 1–5, p. 47 line 7–12). He decided on advertising techniques. (Depo. p. 48–50). He hired, trained, set the wages and work schedule of his staff. (Depo. p. 100 line 19–23, p. 93 line 13–17, p. 94 line 3–15, p. 95, p. 96 line 4–11, p. 103 line 1–2). He delegated routine sales and other matters to his staff. (Depo. p. 83 line 12–24, p. 147 line 9–23).

### (iii) Plaintiff Hogan

Plaintiff Hogan stated that "... the primary function of a Neighborhood Office Agent is to sell and service Allstate products thereby building a quality book of business." (Depo. p. 244 line 10–12). He decided on how to reach potential customers and promote the business. (Depo. p. 138 line 7–25, p. 139 line 9–17, p. 145 line 10–17, p. 154 line 8–18). He advised clients, and adapted policies to customers' specific needs. (Depo. p. 93 line 12–25, p. 94). He stated that five percent of his duties consisted of making deposits at the bank, doing the Remittance Report, and doing computer-based training at the of-

fice. Twenty-five percent of his duties consisted of cultivating new business. Seventy percent of his duties consisted of servicing existing customers. (Depo. p. 159 line 5–20). He recruited and set the wages of his staff. (Depo. p. 134 line 8–21, p. 121 line 23–25, p. 122 line 1–8). He often delegated routine servicing duties to his staff. (Depo. p. 128 line 4–18).

### (iv) Plaintiff McCurley

Plaintiff McCurley represented Allstate. (Depo. p. 26 line 15–25, p. 27 line 1). She stated that "(a)s an employee, my job was to sell and service." (Depo. p. 25 line 22–23). She promoted sales, utilized her own marketing methods, and decided when and where to advertise as well as how much to spend on advertising. (Depo. p. 26 line 7–9, p. 38 line 15–25, p. 39 line 1–9, p. 131 line 16–25). She acknowledged that NOAs choose their own sales techniques. (Depo. p. 48 line 2–5). She decided on which products fit customers' specific needs. (Depo. p. 57 line 13–16). She decided on how to cultivate renewals with existing clients by maintaining a relationship with those clients (i.e., sent birthday cards to clients). (Depo. p. 127 line 22–25, p. 128). She sought out, interviewed, evaluated, hired and trained her own staff. (Depo. p. 65 line 12–25, p. 66 line 1–17, p. 69 line 5–7, p. 80 line 1). She set the wages and work schedule of her staff. (Depo. p. 67 line 2–14, line 23–25, p. 68 line 10–11).

### (v) Plaintiff Pace

Plaintiff Pace stated that his primary function as an Allstate agent was to sell and service Allstate products. (Depo. p. 22 line 10–18). Seventy percent of his time consisted of servicing existing customers, ten percent consisted of discussing Allstate products with potential new customers, and another ten percent consisted of contacting existing clients. (Depo. p.

205 line 12–25, p. 206 line 1–19). He decided on how to reach potential customers. (Depo. 92 line 15–25, p. 93–94). He promoted the sale of Allstate products. (Depo. p. 21 line 22–25, p. 22 line 10–18, p. 22 line 19–22). He advised potential customers and decided on which Allstate products fit customers' specific needs. (Depo. p. 121 line 7–25, p. 122 line 1–6, p. 133 line 19–25, p. 134 line 1–24). He sought out, interviewed, and hired his own employees. (Depo. p. 34 line 23–25, p. 35 line 1–22). He supervised and evaluated his employees. (Depo. p. 36 line 6–7, p. 38 line 11–21, p. 46 line 17–19). He set the work schedules and wages of his employees. (Depo. p. 36 line 20–21, p. 46 line 15–16, p. 37 line 9–25, p. 46 line 9–10). He decided when and where to advertise. (Depo. p. 97 line 3–25, p. 99 line 16–21, p. 101 line 9–25, p. 102 line 1–4, p. 103 line 11–25). He also decided on how much to spend for advertising. (Depo. p. 157 line 7–16). He delegated the actual sale and routine matters to a staff member. (Plaint. Pace Depo. p. 128 line 10–23, p. 134 line 25, p. 135 line 1–14, p. 202 line 10–25, p. 203 line 1–7).

### (vi) Plaintiff Villemain

Plaintiff Villemain decided on how to reach potential customers. (Depo. p. 138 line 7–25). He decided where and when to advertise. (Depo. p. 110 line 5–22, p. 134 line 15–19). He decided on which Allstate products fit customers' specific needs. (Depo. p. 39 line 7–10, p. 46 line 12–13, p. 48 line 3–12). He attempted to maintain good customer relations in order to obtain renewals. (Depo. p. 125 line 3–19). He interviewed, hired, supervised, and evaluated his own employees. (Depo. p. 103 line 1–17, p. 119 line 24–25, p. 116 line 4–25, p. 118 line 18–25). He set the wages and work schedules for his employees. (Depo. p. 118 line 18–25, p. 119 line 1–16). He often delegated the actual sale of a

policy to a staff member. (Depo. p. 88 line 1–16).

Plaintiffs contend the foregoing activities are "production" work which would render the administrative exemption inapplicable. Plaintiffs argue that, along with the production of the insurance policies, the selling and servicing activities also are part of the production process. Defendant contends that the creation of the insurance policies themselves is the production work, and that Plaintiffs' duties have nothing to do with the creation of Defendant's insurance policies. Therefore Defendant asserts that Plaintiffs' duties fall on the administrative side of the business rather than production.

This issue was addressed directly in *Reich v. John Alden Life Insurance Co.*, 126 F.3d 1 (1st Cir.1997). There, the First Circuit agreed with the District Court determination that John Alden Insurance Co. was in the business of designing, creating, and selling insurance policies, and that the products generated by John Alden were the insurance policies. *Id.* at 9. The court found that the marketing representatives for John Alden were not involved in the design or generation of insurance policies, the product "that the enterprise exists to produce and market." *Id.* at 9 (citing *Dalheim*, 918 F.2d at 1230). According to the court, "(t)he day-to-day activities of marketing representatives are more in the nature of 'representing the company' and 'promoting sales' of John Alden products, two examples of exempt administrative work provided by § *541.205(b)* of the interpretations." *Id.* at 10. The marketing representatives are engaged in something more than just routine selling efforts focused simply on particular sales transactions. *Id.* at 10. "Rather, their agent contacts are 'aimed at promoting (i.e., increasing, developing, facilitating, and/or maintaining) customer sales generally,' . . .

activity which is deemed administrative sales promotion work under § *541.205(b)*." *Id.* at 10. The "servicing" activities of the marketing representatives were also deemed administrative because they were clearly ancillary to John Alden's principal production activity. *Id.* at 10. Therefore, the marketing representatives were not considered production employees. *Id.* at 9.

*John Alden* is only distinguishable from the present case in that the marketing representatives' primary duty there was to market John Alden products to an independent sales force rather than the end purchaser or future policy holders. Here the NOAs sell insurance policies to the end purchaser. This distinction does not make a meaningful difference and does not alter the application of *John Alden* to the case at bar.

Plaintiffs counter *John Alden* with *Casas v. Conseco Fin. Corp.*, 2002 WL 507059 (D.Minn. Mar. 31, 2002). In *Conseco*, loan originators were employed to make direct sales of loans to the end purchasers. There the job duties of the loan originators were to make telephone contact with potential customers, use standard operating procedures to match the customer's needs with one of Conseco's loan products, and then complete the loan application. *Id.* at *1. The court found the plaintiffs were employed by Conseco primarily to make direct sales of loans to individual customers rather than the broader and more policy-oriented function of "promoting sales" or "representing the company" within the meaning of the regulations. *Id.* at *9. For that reason, the court determined them to be production employees. *Id.* at *8–10.

This apparent conflict with *John Alden* was resolved, this Court believes correctly, by the Georgia District Court in *Wilshin v. Allstate Ins. Co.*, 212 F.Supp.2d 1360 (M.D.Ga.2002). The plaintiff in *Wilshin* was, like here, a NOA for Allstate. The *Wilshin* court determined that NOAs' duties were more similar to the marketing representatives in *John Alden* than the loan originators of *Conseco*. *Id.* at 1377. "Even though the marketing representatives did not have actual contact with the end customers, their duties were not significantly different than the duties of those who do have customer contact." *Id.* at 1377. In addition the court in *Wilshin* found that the duties of the plaintiff were more extensive and involved more discretion that the loan originators in *Conseco*. *Id.* at 1377. Therefore the court held the plaintiff's duties as an NOA fell on the administrative side of the business. *Id.* at 1377.

The Plaintiffs in the instant case are not involved in any way in the production of the insurance policies (the product) of Allstate. Like the plaintiff in *Wilshin*, the Plaintiffs' duties here are more extensive and involve more discretion than the loan originators in *Conseco*. Plaintiffs are involved in promoting (i.e., increasing, developing, facilitating, and/or maintaining) customer sales generally. Further, Plaintiffs' "servicing" activities are ancillary to Allstate's principal production activity and therefore is considered administrative servicing. Since *29 C.F.R. § 779.316* expresses that insurance companies are not retail or service establishments within the meaning of the FLSA, it would be difficult for a court to find that NOAs were involved in the production side of the Allstate business rather than administrative. Plaintiffs' duties are accordingly determined to be administrative under § *541.205(b)*.

In addition to the requirement that an employee's work be administrative and not production, *29 C.F.R. § 541.205(a)* also requires that the employees be "persons who

perform work of 'substantial importance' to the management or operation of the business of his employer or his employer's customers." Employees who formulate management policies or oversee general business operations easily satisfy this "substantial importance" requirement. *John Alden* 126 F.3d 1 at 10 (citing 29 C.F.R. § 541.205(c)). The exemption is not limited to management personnel however. *Id.* at 10. It is necessary to look at "the nature of the work, not its ultimate consequence." *John Alden* 126 F.3d at 11 (quoting *Clark v. J.M. Benson Co.,* 789 F.2d 282 (4th Cir.1986)).

The Plaintiffs can certainly be considered to oversee general business operations. Plaintiffs promote sales, maintain customer relations to increase chances of renewals, and decide on which policies to promote in order to fit customers' specific needs. It does not matter that Plaintiffs can delegate some of their duties to their staff (i.e., the actual sale). 29 C.F.R. § 541.205(c)(6). As long as the duty is substantially important to begin with, it is not lessened by the fact that the duty was carried out by another staff member. *Id.* It is clear that Plaintiffs' duties are "substantially important" to the operations of the Defendant's business.

Plaintiffs' duties fall on the administrative side and are of substantial importance to the operations of the Defendant's business. As such, Plaintiffs satisfy the first prong of both the short and long test of the administrative exemption to the FLSA.

**(b) Discretion and Independent Judgment**

The second prong of both the short and the long test of the administrative exemption requires that the employee exercise discretion and independent judgment. 29 C.F.R. § 541.2. The long test requires that the employee must *customarily* and *regularly* exercise discretion and independent

judgment (*Id.*), whereas the short test requires that the employee's work merely *include* exercise of discretion and independent judgment. *Shillinglaw v. Sys. Works, Inc.,* 1993 WL 603289 at *4–5 (N.D.Ga. Nov.8, 1993); *Dymond v. United States Postal Serv.,* 670 F.2d 93, 95 (8th Cir.1982).

Plaintiffs argue that their AMs gave them guidelines to follow and that not much discretion was left to Plaintiffs on how to operate their business. To the contrary, Plaintiffs exercised discretion and independent judgment over who they hired, how much they payed them, and what hours the staff was required to work. (Plaint. Harrell Depo. p. 55, p. 60, p. 58 line 16–25, p. 74 line 5–20); (Plaint. Cirillo Depo. p. 100 line 19–23, p. 93 line 13–17, p. 94 line 3–15, p. 95. p. 96 line 4–11, p. 103 line 1–2); (Plaint. Hogan Depo. p. 134 line 8–21, p. 121 line 23–25, p. 122 line 1–8); (Plaint. McCurley Depo. p. 65 line 12–25, p. 66 line 1–17, p. 67 line 2–14, line 23–25, p. 68 line 10–11); (Plaint. Pace Depo. p. 34 line 23–25, p. 35 line 1–22, p. 36 line 6–7, p. 38 line 11–21, p. 46 line 17–19, p. 36 line 20–21, p. 46 line 15–16, p. 37 line 9–25, p. 46 line 9–10); (Plaint. Villemain Depo. p. 103 line 1–17, p. 119 line 24–25, p. 116 line 4–25, p. 118 line 18–25, p. 118 line 18–25, p. 119 line 1–16).

Plaintiffs argue that their staffs were managed by a third party vendor and that Plaintiffs were not the ones in control of their staff. But, these third party vendors, if used at all, were merely in charge of payroll and did not affect the discretion that Plaintiffs used when managing their staff. Plaintiffs decided who to hire, what to pay them and the hours to be worked. Plaintiffs used discretion in determining which insurance policies matched each customer's specific needs. (Plaint. Cirillo Depo. p. 47 line 7–12); (Plaint. Hogan Depo. p. 94); (Plaint. McCurley p. 57 line

13–16); (Plaint. Pace Depo. p. 121 line 7–25, p. 122 line 1–6); (Plaint. Villemain Depo. p. 39 line 7–10, p. 46 line 12–13, p. 48 line 3–12). Plaintiffs exercised discretion and independent judgment in deciding on when and where to advertise and how much to spend on each advertisement. (Plaint. Cirillo Depo. p. 48–50); (Plaint. McCurley Depo. p. 131 line 16–25); (Plaint. Pace Depo. p. 97 line 3–25, p. 99 line 16–21, p. 101 line 9–25, p. 102 line 1–4, p. 103 line 11–25); (Plaint. Villemain Depo. p. 110 line 5–22, p. 134 line 15–19). Plaintiffs also used discretion in determining how to reach potential customers in order to promote the business. (Plaint. Cirillo Depo. p. 41 line 17–22); (Plaint. Pace Depo. 92 line 15–25, p. 93–94); (Plaint. Villemain Depo. p. 138 line 7–25).

Based on the deposition testimony in the record, it is clear that Plaintiffs *customarily* and *regularly* exercise discretion and independent judgment. Therefore, the second prong of both the short and the long test of the administrative exemption to the FLSA are satisfied.

## (c) Executes Under Only General Supervision Special Assignments or Tasks

The third prong of the long test of the administrative exemption is satisfied if the employee "executes under only general supervision special assignments and tasks." 29 C.F.R. § 541.2(c)(3). The regulations provide, as examples of employees who perform such "special assignments or tasks," "customer's brokers in stock exchange firms, so-called account executives in advertising firms, or promotion men of various types." 29 C.F.R. § 541.201(a)(3)(ii). Plaintiffs duties are similar to the examples of employees listed above. Additionally, Plaintiffs manage their own offices without interference from Defendant. Defendant does not monitor the day-to-day activities of the Plaintiff. Defendant's supervision is at most, "gener-

al" supervision. (Parties Jnt Stip. Facts p. 1). Thus, the third prong of the long test of the administrative exemption is satisfied.

## (d) No More Than 20 Percent of Plaintiffs' Duties Consisted of Non Exempt Work

The fourth prong of the long test of the administrative exemption requires that employees spend at least 80 percent of their time on exempt administrative tasks, or on non-exempt activities that are "directly and closely related" to exempt administrative activities. 29 C.F.R. § 541.2. The regulations expressly provide that "sales" work is not administrative in the context of a retail or service establishment. 29 C.F.R. § 541.205(a). However, insurance companies are not retail or service establishments within the meaning of the FLSA. 29 C.F.R. § 779.316. Since the "servicing" activities of Plaintiffs are clearly ancillary to Defendant's principal production activity (the creation of insurance policies) the "servicing" aspect of Plaintiffs' duties are also considered administrative within the meaning of *section 541.205(b)*.

Plaintiffs contend that the primary function of a NOA is to sell and service Allstate products. (Plaint. Harrell Depo. p. 207 line 5–7); (Plaint. Hogan Depo. p. 244 line 10–12); (Plaint. McCurley Depo. p. 25 line 22–23); (Plaint. Pace Depo. p. 22 line 10–18). Plaintiffs other administrative duties such as promoting sales, managing staff, and running their own office constitute a significant percentage of their duties as well. Therefore if insurance sales and servicing are not within the meaning of the FLSA, then Plaintiffs can not refute the fact that virtually their entire job is administrative in nature. This Court determines from the facts in the record that Plaintiffs are employees that spend at least 80 per-

cent of their time on exempt administrative tasks, or on non-exempt activities that are "directly and closely related" to exempt administrative activities. Therefore the fourth prong of the long test of the administrative exemption is satisfied.

In sum, Plaintiffs (1) perform office or nonmanual work directly related to management policies or general business operations of his employer or his employer's customers; (2) *customarily* and *regularly* exercise discretion and independent judgment; (3) execute under only general supervision special assignments and tasks; and (4) spend at least 80 percent of their time on exempt administrative tasks, or on non-exempt activities that are "directly and closely related" to exempt administrative activities. Therefore, Plaintiffs fit within the administrative exemption to the FLSA during the period December 1997 – June 2000.

### C. Independent Contractors

Defendant asserts that prior to 1999 Plaintiffs were independent contractors and thus outside the scope of the FLSA altogether. It appears from the record that Plaintiffs may well be independent contractors, but Defendant's prior inconsistent statement in its Closing Agreement with the I.R.S., dated September 1998, that "Allstate has consistently treated the NOAs as employees for all purposes under the [Tax] Code" is sufficient to raise a disputed issue of fact. As such, it is not proper to rule on Plaintiffs' status as an independent contractor at the summary judgment stage.

### IV. CONCLUSION

The Court finds that Plaintiffs satisfy the administrative exemption of the FLSA for the period of December 1997 – June 2000. Therefore Plaintiffs are not entitled to back wages according to the overtime requirements of the FLSA. 29 U.S.C. § 207 and Summary Judgment in favor of Defendant is appropriate.

Therefore, it is **ORDERED AND ADJUDGED:**

1. Defendant's Motion for Summary Judgment (Dkt.# 67) is GRANTED.

2. Plaintiffs' Motion for Partial Summary Judgment (Dkt.# 70) is DENIED.

3. Any other pending motions are denied as moot.

4. The Clerk is directed to close this file.